E. D. STOREY ET AL V. CENTRAL HIDE & RENDERING COMPANY.

No. A-2417. Decided January 25, 1950.
Rehearing overruled February 22, 1950.
(226 S. W., 2d Series, 615.)

*Pollard, Lawrence & Reeves, J. Byron Saunders, W. Dewey Lawrence,* and *William S. Reeves,* all of Tyler, for petitioners.

The Court of Civil Appeals erred in holding that petitioners are not entitled under the facts of this case to a permanent injunction prohibiting the operation of respondent's rendering plant for the reason that petitioners have an adequate remedy

at law; and that only a nuisance per se can be abated; and that under the doctrine of balancing of equities respondent's plant could not be enjoined by petitioners who should be relegated to a suit for damages. Galveston, H. & S. A. Ry. Co. v. DeGroff, 102 Texas 433, 118 S. W. 134; Rainey v. Red River T. & S. Ry. Co. 89 S. W. 768; Stone v. City of Wylei, 34 S. W. (2d) 842.

*Lasseter, Spruiell, Lowry, Potter & Lasater,* of Tyler, and *McDonald & Anderson* and *Geo. W. Anderson,* all of Wichita Falls, for relators.

The Court of Civil Appeals correctly held that petitioners are not entitled under the facts and circumstances of this case to a permanent injunction prohibiting the operation of respondent's plant, when they have an adequate legal remedy for damages; that a lawful useful business could not be abated if the complainants had an adequate remedy at law; that petitioners were not entitled to a permanent injunction because the uncontroverted evidence did not show that they had suffered or will continue to suffer irreparable injuries; and that respondent's useful and lawful enterprise should not be abated but relegated to a suit for damages. Gose v. Coryell, 126 S. W. 1164; Royalty v. Strange, 220 S. W. 421; Humble Oil and Refining Co. v. Luckel, 154 S. W. (2d) 155.

MR. JUSTICE GRIFFIN delivered the opinion of the Court.

This is a case for an injunction brought by petitioners against respondent seeking to perpetually enjoin the respondents from operating a rendering plant in the vicinity of the petitioners' lands near Tyler, Texas. Upon a trial before a jury and the answers of the jury to special issues favorable to petitioners, the trial court entered judgment perpetually enjoining respondents from operating such plant. Upon appeal to the Court of Civil Appeals at Texarkana, this judgment was reversed, the injunction dissolved and the cause remanded to the trial court for further proceedings in accordance with the opinion. The Court of Civil Appeals held that petitioners were not entitled to perpetually enjoin the operation of the plant, but were relegated to their suits for damages suffered by virtue of such operation. The opinion of the Court of Civil Appeals gives a full and complete statement of the case as presented. Suffice it to say that the findings of the jury have evidence to support them. See Central Hide & Rendering Co. v. Storey et al., 223 S. W. (2d) 81. Petitioners' application for writ of error was granted upon the points complaining of such holding by the

Court of Civil Appeals. Additional facts will be stated by us as deemed necessary to an understanding of our decision.

The only question to be decided is whether this nuisance should be abated, or should petitioners be relegated to suits for damages for the injuries the record shows they suffer by virtue of respondent's operation of the rendering plant.

■ The operation of the rendering plant is a lawful business and it does not constitute a nuisance per se, and petitioners do not contend that it is a nuisance per se. "On the other hand a lawful business may become a nuisance in fact when it is operated in such a place or manner as seriously to interfere with the enjoyment of life and property." 31 Tex. Jur. p. 433, Nuisance ,Sec. 21, and authorities therein cited. Landwer v. Fuller (Civ. App.), 187 S. W. (2d) 670, writ refused want of merit; King v. Columbian Carbon Co., 152 Fed. 2d, 636 (5th Cir. 1946).

The area where this plant was originally located in 1944 is one that has been developing as an industrial area for a period of time antedating the establishment of this plant. The record shows many industries and of varied kind and character have located in this area within the past five to ten years. The evidence shows that in order to properly operate a plant of the kind and character of the plant involved, it is necessary to have available three phase high-powered electrical lines, abundant water and an adequate gas supply. At the time the plant was established in 1944, the present location was the only place where all three requisites were found.

The evidence showed there was no location to which the plant could be moved that afforded these facilities which was not in a section where people resided who might object to the location. It would entail a loss of $30,000.00 to move the plant. The permanent injunction puts respondent out of business and destroys their property. The operation of the plant does not destroy any of the petitioners' homes. One has built a new home in this same neighborhood and 150 yards nearer the plant than the home in which he was living at the time the plant was established. Some land in the immediate vicinity was purchased at a price of $1000.00 per acre about the time the plant was built, but since had been sold for $2500.00 per acre for use by a bearing factory which was built there. When the plant was built there was in this vicinity a slaughter house, a horse and mule barn, a dairy, a hog pen in which many hogs were raised

and fattened, a cat and dog hospital, a junk yard, and other commercial establishments. The testimony of all petitioners and their witnesses was that the offensive odors and flies were not always present, but generally only when the wind was in the right direction; in other words, the inconvenience and obnoxious odors did not affect the homes all the time, but only occasionally. Some of the petitioners' witnesses had not been bothered for as much as three weeks to thirty days prior to the present trial. The evidence on the part of the respondent's witnesses (which included three employees of the State Department of Health, Sanitation Division) was to the effect that the respondent had a plant of the most modern and efficient design and that respondent was carrying out the latest and best recognized scientific practices to keep down odors and flies. All these practices were carried out by respondent in order to protect petitioners from the injuries which they complained of. Respondent had spent much money in modernizing its plant, and had satisfied the State Department of Health with regard to the sanitary operation of its plant. The evidence showed that there was a need for the rendering plant to conserve what would otherwise be wasted; and to afford an efficient and economical means of disposing of garbage, dead animals and residue from the packing and slaughter houses in Smith County, Texas. It was also shown that this was the only rendering plant in the county and served the needs of some 75,000 people to promote better sanitary conditions for all of Smith County. The exhibits of petitioners were photographs made in July, 1948, whereas the evidence showed the respondent had taken measures to correct the abuses so shown. It was shown without dispute that about a mile north of respondent's plant there was an open kettle "wet" type rendering plant where animal viscera and bones were left in the open to rot,. and create offensive odors and draw flies. The respondent was in no manner responsible for such condition.

The case of King v. Columbia Carbon Co., 152 Fed. (2d) 636, by Circuit Court of Appeals, 5th Circuit, has a fine discussion of the law applicable to nuisances and their abatement. We think the following appropriate to our case:

"A business which is lawful in itself may become a nuisance either because of the locality in which it is carried on or because it is conducted in an improper manner. 31 Tex. Jur. 424, 13; 39 Am. Jur. 325, 44.

"In determining whether a business is a nuisance per accidens the fact that the business is a useful or necessary one or that it contributes to the welfare and prosperity of the community

is not determinative, but when expensive plants have been erected and are used in carrying on a useful business adjacent property owners will not be permitted to maintain actions for every trifling annoyance with such business causes them. See City of Dallas v. Newberg, Tex. Civ. App., 116 S. W. 2d 476. On the other hand the law does not allow one to be driven from his home or compelled to live in substantial danger or discomfort even though the danger or discomfort is caused by a lawful and useful business. 39 Am. Jur. 327, 45.

"In determining whether a thing or a business is a nuisance the location and surroundings are important and should be considered with other circumstances of the case. A business or industry otherwise lawful may be a nuisance because of the place where it is located or carried on, and although it is not in itself a nuisance, it may become such when it is located in a place forbidden by law or wholly uncongenial to its type of enterprise. 'A nuisance may be a right thing in the wrong place, like a pig in the parlor instead of the barnyard.' Justice Sutherland in Euclid, Ohio, v. Ambler Realty Co., 272 U. S. 365, 47 Sup. Ct. 114, 118, 71 L. Ed. 303, 54 A. L. R. 1016. See Gose v. Coryell, 59 Texas Civ. App. 504, 126 S. W. 1164."

■ An abatement of a lawful place of business is a harsh remedy, and we believe the Court of Civil Appeals majority opinion has correctly disposed of this cause. 39 Am. Jur. p. 420 sec. 153.

Petitioners take the position that the jury having found the facts constituting the nuisance, they were entitled to the injunction abating the plant as a matter of right. We do not agree. We think that there should have been an balancing of equities in order to determine if an injunction should have been granted.

"According to the doctrine of 'comparative injury' or 'balancing of equities' the court will consider the injury which may result to the defendant and the public by granting the injunction as well as the injury to be sustained by the complainant if the writ be denied. If the court finds that the injury to the complainant is slight in comparison to the injury caused the defendant and the public by enjoining the nuisance, relief will ordinarily be refused. It has been pointed out that the cases in which a nuisance is permitted to exist under this doctrine are based on the stern rule of necessity rather than on the right of the author of the nuisance to work a hurt or injury to his neighbor. The necessity of others may compel the injured party

to seek relief by way of an action at law for damages rather than by a suit in equity to abate the nuisance.

" 'Some one must suffer these inconveniences rather than that the public interest should suffer . . . These conflicting interests call for a solution of the question by the application of the broad principles of right and justice, leaving the individual to his remedy by compensation and maintaining the public interests intact; this works hardships on the individual, but they are incident to civilization with its physical developments, demanding more and more the means of rapid transportation of persons and property.'

"On the other hand, an injunction may issue where the injury to the opposing party and the public is slight or disproportionate to the injury suffered by the complainant.

"Some decisions ignore the balance of injury doctrine as above stated. They seemingly authorize the grant of an injunction as a matter of right where the facts present a clear case of nuisance. But these cases do not represent the weight of authority." Sec. 35, Nuisances, 31 Tex. Jur. 448.

■ It is claimed by petitioners and in the dissenting opinion in the Court of Civil Appeals that the injunction abating the plant is authorized and justified by the following provision of Art. 4642, R. C. S. 1925, authorizing injunctions:

"4. * * * * *, or irreparable injury to real estate or personal property is threatened, irrespective of any legal remedy at law."

This contention is effectively answered by the case of Hill v. Brown, 237 S. W. 252, in an opinion by Judge Randolph of Sec. A, Commission of Appeals, and which judgment recommended by the Commission was adopted as the judgment of the Supreme Court. After a full discussion of the above-quoted provision of the statute (then Art. 4643, Vernon's Sayles Ann. Civ. State. 1914), and cases by the Supreme Court, it is said:

"We do not think it was the intention of the Legislature in the enactment of the injunction statutes above set out to simply provide a choice of remedies for litigants, but that the intention was to provide a remedy to cover those injuries for which there was not clear, full, and adequate relief at law. Nor did our Supreme Court intend to abrogate the distinction between law and equity in the application of the remedies provided under each system, but only intended to furnish a complete safeguard under the equitable jurisdiction of our courts for the

protection of parties invoking same, who show that they are 'entitled to same.' " 237 S. W. 252, p. 255.

The case of Hill v. Brown, supra, has been cited many times in later cases for the principle of law set out above. A reference to Shephards' Southwestern Reporter Citations will show the number of times that case has been relied upon, and that it has never been questioned. See also Powers v. Temple Trust Co., 124 Texas 440, (5), 78 S. W. (2d) 951, (4), Commission opinion adopted by the Supreme Court.

It follows from what we have said above that we think the trial court erred in not receiving the testimony offered by respondent on the balancing of equities. This question will not likely arise however on a retrial of the cause, as such evidence can be offered by respondent in putting on its defensive testimony instead of at the time shown in the present trial.

The judgment of the Court of Civil Appeals is in all things affirmed.

Opinion delivered January 25, 1950.

Rehearing overruled February 22, 1950.