COURT
OF APPEALS

SECOND DISTRICT
OF TEXAS

FORT WORTH

 

 

NO. 2-07-339-CV

 

 

 

RODERICK
OSHEA PATRICK                                         APPELLANTS

AND
ROD PATRICK, INC.                                                                      

 

                                                   V.

 

BEVERLY THOMAS                                                                 APPELLEE

 

------------

 

FROM COUNTY COURT AT LAW NO. 2 OF PARKER COUNTY

 

------------

 

MEMORANDUM
OPINION[1]

 

------------

I.  Introduction








This is an appeal from the
trial court=s imposition
of a temporary injunction against Appellant Roderick Oshea Patrick.[2]  The injunction enjoins Patrick from selling
three horses that Appellee Beverly Thomas claims are hers.  In one issue, Patrick contends that the trial
court abused its discretion by issuing the injunction because Thomas failed to
prove that she would suffer irreparable injury. 
We will affirm.

II.  Factual and Procedural Background

In the summer of 2006,
Patrick and Thomas met and began dating. 
By November of that year, Thomas had moved in with Patrick and had begun
working for him as the office manager of his company, Rod Patrick, Inc.  In July 2007, Patrick alleged that Thomas had
embezzled a substantial amount of money from the company.  Sometime after Patrick made these
allegations, Thomas assigned ownership of several horses, including the three
in dispute, to Patrick.  

After transferring ownership
of the horses, however, Thomas attempted to rescind the assignment, arguing
that Patrick had coerced the assignment by threatening to bring criminal
charges against her if she did not transfer possession of the horses to
him.  Thomas sued to regain possession
and ownership of the horses.  Because
Patrick had threatened to sell the horses, Thomas sought a temporary injunction
to stop Patrick from taking any action that would affect her ownership rights
to the horses in the event that the trial court determined that the horses
belonged to her. 








After a hearing, the trial
court entered an injunction prohibiting Patrick from Aselling, transferring, encumbering, concealing the whereabouts of,
disposing of, or otherwise taking any action affecting [Thomas=s] rights to ownership@ of the three horses until after the trial court rendered final
judgment in the lawsuit to determine ownership rights.  Patrick now appeals the temporary injunction.

III.  Standard of Review








In an appeal from an order
granting or denying a temporary injunction, the scope of review is restricted
to the validity of the order granting or denying relief.  Walling v. Metcalfe, 863 S.W.2d 56, 58
(Tex. 1993); Argyle ISD v. Wolf, 234 S.W.3d 229, 237 (Tex. App.CFort Worth 2007, no pet.); Fox v. Tropical Warehouses, Inc.,
121 S.W.3d 853, 857 (Tex. App.CFort Worth 2003, no pet.). 
Whether to grant or deny a request for a temporary injunction is within
the trial court=s
discretion, and an appellate court will not reverse its decision absent an
abuse of discretion.  Butnaru v. Ford
Motor Co., 84 S.W.3d 198, 204 (Tex. 2002); Walling, 863 S.W.2d at
58; Argyle ISD, 234 S.W.3d at 237. 
Accordingly, when reviewing such a decision, the appellate court must
view the evidence in the light most favorable to the trial court=s order, indulging every reasonable inference in its favor, and
determine whether the order was so arbitrary that it exceeded the bounds of
reasonable discretion.  Argyle ISD,
234 S.W.3d at 237; Fox, 121 S.W.3d at 857.  A trial court does not abuse its discretion
if it bases its decision on conflicting evidence and evidence in the record
reasonably supports the trial court=s decision.  Davis v. Huey,
571 S.W.2d 859, 862 (Tex. 1978); Argyle ISD, 234 S.W.3d at 237; Fox,
121 S.W.3d at 857.  Furthermore, an abuse
of discretion does not occur as long as some evidence of substantive and
probative character exists to support the trial court=s decision.  Butnaru, 84
S.W.3d at 211.

IV.  Irreparable Injuries to Thomas

A.     Law to Determine Irreparable Injury








A temporary injunction=s purpose is to preserve the status quo of the litigation=s subject matter pending a trial on the merits.  Butnaru, 84 S.W.3d at 204 (citing Walling,
863 S.W.2d at 57).  A temporary
injunction is an extraordinary remedy and does not issue as a matter of
right.  Id.  To obtain a temporary injunction, the
applicant must plead and prove three specific elements: (1) a cause of action
against the defendant; (2) a probable right to the relief sought; and (3) a
probable, imminent, and irreparable injury in the interim.[3]  Id. 
To satisfy the third element, the applicant for the injunction must
demonstrate imminent harm, an irreparable injury, and the absence of an
adequate remedy at law.  Mabrey v.
SandStream, Inc., 124 S.W.3d 302, 317 (Tex. App.CFort Worth 2003, no pet.); see Tex. Civ. Prac. & Rem. Code Ann. ' 65.011(5) (Vernon 1997)
(establishing that a trial court may grant a writ of injunction if irreparable
injury to real or personal property is threatened, irrespective of any remedy
at law).[4]

An injury is irreparable if
the injured party cannot be adequately compensated in damages or if the damages
cannot be measured by any certain pecuniary standard.  Butnaru, 84 S.W.3d at 204.  Alternatively, an injunction will not
issue if damages are sufficient to compensate the plaintiff for any wrong
committed by the defendant and if the damages are subject to measurement by an
ascertainable pecuniary standard.  Tom
James Co. v. Mendrop, 819 S.W.2d 251, 253 (Tex. App.CFort Worth 1991, no writ).  The
party requesting the injunction has the burden of proof as to establishing the
elements necessary for issuance of a temporary injunction.  See id.

 

 








B.     Application to the Facts of this
Case

In the case at hand, Patrick
complains that Thomas failed to prove that she would suffer irreparable injury
without the temporary injunction and that the trial court therefore abused its
discretion by issuing the injunction. 
Thomas responds that the trial court did not abuse its discretion
because her testimony at the temporary injunction hearing proved that she would
suffer irreparable injury.[5]









At the hearing, Thomas
testified about the three horses that are the subject matter of the injunction
and this appealCAristamarie,
Smart Mates Promise, and KS Spiderman. 
Thomas stated that she had had possession of Aristamarie since 2001 and
that Aristamarie was Airreplaceable@ to her. Additionally, the trial court admitted into evidence an email
between Thomas and a friend wherein Thomas had stated that Aristamarie (along
with a horse that Patrick sold before the injunction issued) was Abeloved@ and meant a
Agreat deal@ to
her.  Evidence also reflected that Thomas
had fervently fought for Aristamarie for several years during a hotly contested
divorce. The other two horses, Thomas said, were given to her as presents by
Patrick and were Avery special
horses.@

As far as the monetary price
of the horses, Thomas testified that Aristamarie=s value was A[w]hatever
somebody will pay for her@ and that
Thomas had Aturned down
75,000 for her a few years ago.@  Furthermore, Thomas had taken
out a lien on Aristamarie at a local bank in the amount of $30,000.  Patrick testified that he bought the other
two horses for Thomas in early 2007, paying $25,000 for Smart Mates Promise and
$15,000 for KS Spiderman.  

Thomas additionally testified
that the horses (including the one that Patrick had sold for $10,000 before the
injunction issued) would, together, fetch approximately $200,000.  Patrick disagreed; Patrick testified that he
had offered to sell all of the horses together (including the one that he had
sold before the injunction issued) for a price of $55,000 and that they did not
sell at that price.  The trial court
accepted Thomas=s argument
that the horses were unique and granted the injunction.













The evidence presented by
Thomas in this case is undoubtedly diminutive, but we cannot substitute our
judgment for the trial court=s.  See Butnaru, 84
S.W.3d at 204.  Governed by our standard
of review, we must view what little evidence Thomas offered in the light most
favorable to the trial court=s order and indulge every reasonable inference in its favor.  See Argyle ISD, 234 S.W.3d at
237.  While it is scant, Thomas=s testimony about the nonmonetary value of the horses to her at least
provided some evidence of substantive and probative character upon which
the trial court could have determined that an irreparable injury impossible of
measurement by an ascertainable pecuniary standard would result in the absence
of an injunction.  See id.; Butnaru,
84 S.W.3d at 211; Mendrop, 819 S.W.2d at 253; see also Bueckner v.
Hamel, 886 S.W.2d 368, 373 (Tex. App.CHouston [1st Dist.] 1994, writ denied) (Andell, J., concurring)
(noting that the intrinsic value of domestic animals to their owners may be
much greater than their market value); Harris v. Barcroft, 543 P.2d 656,
657 (Or. 1975) (declaring that, where the evidence established a dog was of
championship caliber, the dog was unique chattel and would therefore be the
proper subject of specific performance); Douglas Laycock, The Death of the
Irreparable Injury Rule, 103 Harv.
L. Rev. 687, 705-06 (1990) (opining that if certain goods, such as
heirlooms, cannot be replaced by money, then money damages are not an adequate
remedy for their loss and harm to them may be considered irreparable).  A trial court does not abuse its discretion
if evidence in the record reasonably supports its decision, and, in this case,
such evidence was present.  See Davis,
571 S.W.2d at 862; Argyle ISD, 234 S.W.3d at 237; Fox, 121 S.W.3d
at 857.  The trial court therefore did
not abuse its discretion.

We further note that at the
time of the temporary injunction hearing the horses were in Patrick=s possession while Thomas=s case against him was pending. 
Thus, the trial court=s action in issuing the temporary injunction fulfilled the very
purpose of such injunctionsCthe preservation of the status quo of the litigation=s subject matter pending a trial on the merits.  See Butnaru, 84 S.W.3d at 204.  Accordingly, based on the evidence before the
trial court and the purpose of temporary injunctions, we overrule Patrick=s sole issue.

V.  Conclusion

Having overruled Patrick=s sole issue, we affirm the trial court=s order granting a temporary injunction.

 

SUE WALKER

JUSTICE

 

PANEL A:   CAYCE, C.J.; HOLMAN
and WALKER, JJ.

DELIVERED: May 1, 2008











[1]See Tex. R. App. P. 47.4.





[2]Although
Rod Patrick, Inc. is a defendant in the trial court and is identified as an
appellant in the notice of appeal filed with this court, the trial court=s
temporary injunction was entered only against Roderick Oshea Patrick.  Consequently, we treat him as the only
appellant here.





[3]On
appeal, Patrick challenges only the irreparable injury element.





[4]Because
a trial court acts as a court of equity in granting a temporary injunction,
some courts have considered section 65.011(5) as including the equitable
requirement of an inadequate remedy at law. 
See Cardinal Health Staffing Network, Inc. v. Bowen, 106 S.W.3d
230, 234 n.2 (Tex. App.CHouston
[1st Dist.] 2003, no pet.) (citing Storey v. Cent. Hide & Rendering Co.,
148 Tex. 509, 226 S.W.2d 615, 619 (1950)).





[5]Thomas
additionally argues on appeal that the trial court could have found that she
had no adequate remedy at law because conflicting evidence existed as to
whether Patrick could satisfy a damage award. 
The temporary injunction, however, recites only that Thomas will suffer
irreparable injury because the property at issue is Aunique
and irreplaceable.@  Because our scope of review is restricted to
the order granting the injunction, we look only to whether Thomas established
irreparable injury.  See Walling,
863 S.W.2d at 58.