

# COURT OF APPEALS

**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

## NO. 2-07-339-CV

RODERICK OSHEA PATRICK                                        APPELLANTS
AND ROD PATRICK, INC.

V.

BEVERLY THOMAS                                                        APPELLEE

------------

FROM COUNTY COURT AT LAW NO. 2 OF PARKER COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. INTRODUCTION

This is an appeal from the trial court's imposition of a temporary injunction against Appellant Roderick Oshea Patrick.[2] The injunction enjoins

---

[1] *See* TEX. R. APP. P. 47.4.

[2] Although Rod Patrick, Inc. is a defendant in the trial court and is identified as an appellant in the notice of appeal filed with this court, the trial court's temporary injunction was entered only against Roderick Oshea Patrick. Consequently, we treat him as the only appellant here.

Patrick from selling three horses that Appellee Beverly Thomas claims are hers. In one issue, Patrick contends that the trial court abused its discretion by issuing the injunction because Thomas failed to prove that she would suffer irreparable injury.  We will affirm.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

In the summer of 2006, Patrick and Thomas met and began dating.  By November of that year, Thomas had moved in with Patrick and had begun working for him as the office manager of his company, Rod Patrick, Inc.  In July 2007, Patrick alleged that Thomas had embezzled a substantial amount of money from the company.  Sometime after Patrick made these allegations, Thomas assigned ownership of several horses, including the three in dispute, to Patrick.

After transferring ownership of the horses, however, Thomas attempted to rescind the assignment, arguing that Patrick had coerced the assignment by threatening to bring criminal charges against her if she did not transfer possession of the horses to him.  Thomas sued to regain possession and ownership of the horses.  Because Patrick had threatened to sell the horses, Thomas sought a temporary injunction to stop Patrick from taking any action that would affect her ownership rights to the horses in the event that the trial court determined that the horses belonged to her.

2

After a hearing, the trial court entered an injunction prohibiting Patrick from "selling, transferring, encumbering, concealing the whereabouts of, disposing of, or otherwise taking any action affecting [Thomas's] rights to ownership" of the three horses until after the trial court rendered final judgment in the lawsuit to determine ownership rights. Patrick now appeals the temporary injunction.

### III. STANDARD OF REVIEW

In an appeal from an order granting or denying a temporary injunction, the scope of review is restricted to the validity of the order granting or denying relief. *Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993); *Argyle ISD v. Wolf*, 234 S.W.3d 229, 237 (Tex. App.—Fort Worth 2007, no pet.); *Fox v. Tropical Warehouses, Inc.*, 121 S.W.3d 853, 857 (Tex. App.—Fort Worth 2003, no pet.). Whether to grant or deny a request for a temporary injunction is within the trial court's discretion, and an appellate court will not reverse its decision absent an abuse of discretion. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002); *Walling*, 863 S.W.2d at 58; *Argyle ISD*, 234 S.W.3d at 237. Accordingly, when reviewing such a decision, the appellate court must view the evidence in the light most favorable to the trial court's order, indulging every reasonable inference in its favor, and determine whether the order was so arbitrary that it exceeded the bounds of reasonable discretion. *Argyle ISD*,

3

234 S.W.3d at 237; *Fox*, 121 S.W.3d at 857. A trial court does not abuse its discretion if it bases its decision on conflicting evidence and evidence in the record reasonably supports the trial court's decision. *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex. 1978); *Argyle ISD*, 234 S.W.3d at 237; *Fox*, 121 S.W.3d at 857. Furthermore, an abuse of discretion does not occur as long as some evidence of substantive and probative character exists to support the trial court's decision. *Butnaru*, 84 S.W.3d at 211.

### IV. IRREPARABLE INJURIES TO THOMAS

#### A.    Law to Determine Irreparable Injury

A temporary injunction's purpose is to preserve the status quo of the litigation's subject matter pending a trial on the merits. *Butnaru*, 84 S.W.3d at 204 (citing *Walling*, 863 S.W.2d at 57). A temporary injunction is an extraordinary remedy and does not issue as a matter of right. *Id.* To obtain a temporary injunction, the applicant must plead and prove three specific elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim.[3] *Id.* To satisfy the third element, the applicant for the injunction must demonstrate imminent harm, an irreparable injury, and the absence of an

---

[3] On appeal, Patrick challenges only the irreparable injury element.

4

adequate remedy at law. *Mabrey v. SandStream*, Inc., 124 S.W.3d 302, 317 (Tex. App.—Fort Worth 2003, no pet.); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 65.011(5) (Vernon 1997) (establishing that a trial court may grant a writ of injunction if irreparable injury to real or personal property is threatened, irrespective of any remedy at law).[4]

An injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard. *Butnaru*, 84 S.W.3d at 204. Alternatively, an injunction will not issue if damages are sufficient to compensate the plaintiff for any wrong committed by the defendant and if the damages are subject to measurement by an ascertainable pecuniary standard. *Tom James Co. v. Mendrop*, 819 S.W.2d 251, 253 (Tex. App.—Fort Worth 1991, no writ). The party requesting the injunction has the burden of proof as to establishing the elements necessary for issuance of a temporary injunction. *See id.*

---

[4] Because a trial court acts as a court of equity in granting a temporary injunction, some courts have considered section 65.011(5) as including the equitable requirement of an inadequate remedy at law. *See Cardinal Health Staffing Network, Inc. v. Bowen*, 106 S.W.3d 230, 234 n.2 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (citing *Storey v. Cent. Hide & Rendering Co.*, 148 Tex. 509, 226 S.W.2d 615, 619 (1950)).

5

**B. Application to the Facts of this Case**

In the case at hand, Patrick complains that Thomas failed to prove that she would suffer irreparable injury without the temporary injunction and that the trial court therefore abused its discretion by issuing the injunction. Thomas responds that the trial court did not abuse its discretion because her testimony at the temporary injunction hearing proved that she would suffer irreparable injury.[5]

At the hearing, Thomas testified about the three horses that are the subject matter of the injunction and this appeal—Aristamarie, Smart Mates Promise, and KS Spiderman. Thomas stated that she had had possession of Aristamarie since 2001 and that Aristamarie was "irreplaceable" to her. Additionally, the trial court admitted into evidence an email between Thomas and a friend wherein Thomas had stated that Aristamarie (along with a horse that Patrick sold before the injunction issued) was "beloved" and meant a "great deal" to her. Evidence also reflected that Thomas had fervently fought

---

[5] Thomas additionally argues on appeal that the trial court could have found that she had no adequate remedy at law because conflicting evidence existed as to whether Patrick could satisfy a damage award. The temporary injunction, however, recites only that Thomas will suffer irreparable injury because the property at issue is "unique and irreplaceable." Because our scope of review is restricted to the order granting the injunction, we look only to whether Thomas established irreparable injury. *See Walling*, 863 S.W.2d at 58.

for Aristamarie for several years during a hotly contested divorce. The other two horses, Thomas said, were given to her as presents by Patrick and were "very special horses."

As far as the monetary price of the horses, Thomas testified that Aristamarie's value was "[w]hatever somebody will pay for her" and that Thomas had "turned down 75,000 for her a few years ago." Furthermore, Thomas had taken out a lien on Aristamarie at a local bank in the amount of $30,000. Patrick testified that he bought the other two horses for Thomas in early 2007, paying $25,000 for Smart Mates Promise and $15,000 for KS Spiderman.

Thomas additionally testified that the horses (including the one that Patrick had sold for $10,000 before the injunction issued) would, together, fetch approximately $200,000. Patrick disagreed; Patrick testified that he had offered to sell all of the horses together (including the one that he had sold before the injunction issued) for a price of $55,000 and that they did not sell at that price. The trial court accepted Thomas's argument that the horses were unique and granted the injunction.

The evidence presented by Thomas in this case is undoubtedly diminutive, but we cannot substitute our judgment for the trial court's. *See Butnaru*, 84 S.W.3d at 204. Governed by our standard of review, we must view what little

7

evidence Thomas offered in the light most favorable to the trial court's order and indulge every reasonable inference in its favor. *See Argyle ISD*, 234 S.W.3d at 237. While it is scant, Thomas's testimony about the nonmonetary value of the horses to her at least provided *some* evidence of substantive and probative character upon which the trial court could have determined that an irreparable injury impossible of measurement by an ascertainable pecuniary standard would result in the absence of an injunction. *See id.*; *Butnaru*, 84 S.W.3d at 211; *Mendrop*, 819 S.W.2d at 253; *see also Bueckner v. Hamel*, 886 S.W.2d 368, 373 (Tex. App.—Houston [1st Dist.] 1994, writ denied) (Andell, J., concurring) (noting that the intrinsic value of domestic animals to their owners may be much greater than their market value); *Harris v. Barcroft*, 543 P.2d 656, 657 (Or. 1975) (declaring that, where the evidence established a dog was of championship caliber, the dog was unique chattel and would therefore be the proper subject of specific performance); Douglas Laycock, *The Death of the Irreparable Injury Rule*, 103 HARV. L. REV. 687, 705-06 (1990) (opining that if certain goods, such as heirlooms, cannot be replaced by money, then money damages are not an adequate remedy for their loss and harm to them may be considered irreparable). A trial court does not abuse its discretion if evidence in the record reasonably supports its decision, and, in this case, such evidence was present. *See Davis*, 571 S.W.2d at 862; *Argyle ISD*, 234

8

S.W.3d at 237; *Fox*, 121 S.W.3d at 857. The trial court therefore did not abuse its discretion.

We further note that at the time of the temporary injunction hearing the horses were in Patrick's possession while Thomas's case against him was pending. Thus, the trial court's action in issuing the temporary injunction fulfilled the very purpose of such injunctions—the preservation of the status quo of the litigation's subject matter pending a trial on the merits. *See Butnaru*, 84 S.W.3d at 204. Accordingly, based on the evidence before the trial court and the purpose of temporary injunctions, we overrule Patrick's sole issue.

## V. CONCLUSION

Having overruled Patrick's sole issue, we affirm the trial court's order granting a temporary injunction.

SUE WALKER
JUSTICE

PANEL A:   CAYCE, C.J.; HOLMAN and WALKER, JJ.

DELIVERED: May 1, 2008