# NO. 12-20-00198-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *STEVE HUYNH, INDIVIDUALLY, YVONNE HUYNH, INDIVIDUALLY HUYNH POULTRY FARM, LLC D/B/A STEVE THI HUYNH POULTRY FARM D/B/A HUYNH POULTRY FARM, T & N POULTRY FARM, LLC, THINH BAO NGUYEN, INDIVIDUALLY, TIMMY HUYNH POULTRY FARM, TIMMY HUYNH, INDIVIDUALLY AND SANDERSON FARMS, INC., APPELLANTS* | § § | *APPEAL FROM THE 392ND* *JUDICIAL DISTRICT COURT* |
| *V.* | | |
| *FRANK BLANCHARD, ET AL AND RONNY SNOW, ET AL, APPELLEES* | § | *HENDERSON COUNTY, TEXAS* |

## MEMORANDUM OPINION

Steve Huynh, Individually, Yvonne Huynh, Individually, Huynh Poultry Farm, LLC d/b/a Steve Thi Huynh Poultry Farm d/b/a Huynh Poultry Farm, T & N Poultry Farm, LLC, Thinh Bao Nguyen, Individually, Timmy Huynh Poultry Farm, Timmy Huynh, Individually and Sanderson Farms, Inc. (collectively Appellants) appeal the trial court's issuance of a permanent injunction prohibiting them from operating a chicken farm. They present three issues on appeal. We affirm.

## BACKGROUND

Frank Blanchard, Mersini Blanchard, Malakoff Properties, LLC, Ronny Snow, Angelia Snow, Tanya Berry, Kimberly Riley, John Miller, Amy Miller, Chad Martinez, and Emily Martinez (collectively Appellees) each own property in the Malakoff area of Henderson County,

Texas. Prior to 2016, they all enjoyed living in the country and the outdoor areas of their properties.

In 2015, Steve Huynh purchased 231.12 acres of land in Malakoff, with the intent of using the land as a chicken farm for Sanderson. Steve had owned and operated chicken barns for Sanderson since 2002. Previously, Steve owned or controlled the farm, but a different family member applied for and received government subsidies for the operation, which also occurred in this case. Sanderson approved Steve's son, Timmy Huynh, as a grower, even though he was a college student in California and had no prior experience. Steve completed the paperwork and signed Timmy's name. Sanderson also approved Thinh Nguyen, another relative, as a grower. Sanderson approved Steve's property as a barn site even though it knew a nuisance was likely. Steve then entered into "leases" with both Nguyen and Timmy so they could operate the chicken barns on the property. Timmy never paid rent and Nguyen never paid rent in his individual capacity.

Shortly after the chicken barns began operations, Appellees noticed a pungent odor emanating from the barns. Appellees claim the smell from the chicken barns prevents them from enjoying their properties and the outdoors. They complained numerous times to the Texas Commission on Environmental Quality (TCEQ). The TCEQ investigated the complaints and issued notices of violation (NOVs) to Steve, Yvonne Huynh, Huynh Poultry Farm, LLC, and T&N Poultry Farm, LLC.

When the odor failed to dissipate even after the TCEQ's involvement, Appellees filed suit. Two different suits were filed—one by the Blanchard group and one by the Snow group—that were consolidated. The Blanchard group claimed fraud, nuisance, trespass, and intentional interference with property rights. The Snow group asserted claims for nuisance and trespass. Both sets of Appellees sought monetary damages for diminution in property value and permanent injunctions. At the conclusion of trial, the jury found Appellants caused a temporary nuisance and attempted to award monetary damages for diminution of market value. Appellants moved for entry of a take nothing judgment or a judgment notwithstanding the verdict. Appellees moved for entry of a permanent injunction. Following a hearing, the trial court entered a judgment that Appellees be awarded no monetary damages but granting a permanent injunction. This appeal followed.

In their second issue, Appellants contend the evidence is legally insufficient to support a nuisance finding. Specifically, Appellants urge the evidence is insufficient to support a finding of causation and interference rising to the level of a nuisance.

## Standard of Review

When reviewing a finding of fact for legal sufficiency, we may set aside that finding of fact only if the evidence at trial would not enable a reasonable and fair-minded fact finder to make the finding. *See* *City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex. 2005). In making this determination, we must credit favorable evidence if a reasonable fact finder could, and disregard contrary evidence unless a reasonable fact finder could not. *See id.* The fact finder is the sole judge of the credibility of the witnesses and the weight to be assigned to their testimony. *See id.* at 819. The fact finder is free to believe one witness and disbelieve another, and reviewing courts may not impose their own opinions to the contrary. *See id.* Further, a fact finder "may disregard even uncontradicted and unimpeached testimony from disinterested witnesses" where reasonable. *See id.* at 819–20. Accordingly, we must assume that the fact finder chose what testimony to disregard in a way that favors the verdict. *See id.* at 820. Moreover, where conflicting inferences can be drawn from the evidence, it is within the province of the fact finder to choose which inference to draw, so long as more than one inference can reasonably be drawn. *See id.* Therefore, we must assume the fact finder made all inferences in favor of the verdict, if a reasonable person could do so. *See id.*

## Governing Law

A "nuisance" is a condition that substantially interferes with the use and enjoyment of land by causing unreasonable discomfort or annoyance to persons of ordinary sensibilities. *Schneider Nat'l Carriers, Inc. v. Bates,* 147 S.W.3d 264, 269 (Tex. 2004). Courts have divided actionable nuisance into three classifications: (1) negligent invasion of another's interest; (2) intentional invasion of another's interest; or (3) other conduct, culpable because abnormal and out of place in its surroundings, that invades another's interests. *See* *City of Tyler v. Likes,* 962 S.W.2d 489, 503 (Tex. 1997). Foul odors, if sufficiently extreme, may constitute a nuisance. *See Schneider,* 147 S.W.3d at 269; *see also* *Kane v. Cameron Int'l Corp.,* 331 S.W.3d 145, 148 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (nuisance may arise when person's senses are physically assaulted).

Expert testimony is not required to prove causation "when a layperson's general experience and common understanding would enable the layperson to determine from the evidence, with reasonable probability, the causal relationship between the event and the condition." *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 583 (Tex. 2006). When a nuisance involves subjective criteria such as sound or smell, the analysis is fact dependent. *Nat. Gas Pipeline Co. of Am. v. Justiss*, 397 S.W.3d 150, 155 (Tex. 2012). "The point at which an odor moves from unpleasant to insufferable . . . might be difficult to ascertain, but the practical judgment of an intelligent jury is equal to the task." *Id.*

**Analysis**

Appellants urge there is no evidence of substantial interference with Appellees' use and enjoyment of their properties, and no evidence of objectively unreasonable discomfort or annoyance. Appellants also posit that the evidence does not show that they caused the alleged harm.

Appellants purchased the land in 2015 and Sanderson approved them as chicken growers. Appellants set up two LLCs for two farms on the same property, which allowed them to have sixteen barns on the property and grow 444,800 birds per flock, twice the number of birds "likely to cause a persistent nuisance odor" under the TCEQ guidelines. The two farms were a mere 300 feet apart.

Sanderson placed its first flock of chickens in eight barns in June 2016. All sixteen barns began operating in November 2016. The evidence showed that, for each cycle, Sanderson hatched a flock of chicks and delivered them to the barns. The chickens would then grow over approximately sixty days into broilers. The chickens were then caught and transported to Sanderson's Palestine plant for processing. A new flock was delivered one or two weeks later and the cycle repeated. Sanderson placed 27,800 chicks in each of the sixteen barns at a time.

The evidence showed that the chickens produced approximately ten million pounds, or five thousand tons, of manure each year. Furthermore, the flocks each had approximately a five percent mortality rate. The dead chickens were carried to composting sheds where they were placed in layers and covered by wet litter saturated with manure. Sanderson's division manager testified via deposition that dead chickens, like most dead animals, have a rotting odor. Dr. Albert Heber, an agricultural engineer, and Appellants' expert, testified that chicken manure is

4

"offensive" and "smells bad." The manure generated ammonia and hydrogen sulfide, both of which have strong odors.

On October 11, 2016, Ronny Snow called Sanderson's Palestine production office and complained about the smell emitted by the chicken barns. On October 18, a TCEQ investigator documented nuisance odors and determined that the "chicken houses" were the source. The report stated, "this is a violation of 30 Texas Administrative Code § 101.4," which prohibits the discharge of air contaminants in concentration and duration that it interferes with the normal use and enjoyment of property. It also cited to Section 382.085(b) of the Texas Health and Safety Code.[1] As a result, the investigator issued a NOV that recommended "Mr. Huynh shall submit a plan and/or documentation necessary to address the outstanding violation to prevent recurrence of same or similar incidents." Another TCEQ investigation was conducted on February 20, 2017, and the investigator concluded that a violation occurred. As a result, another NOV was issued. In June 2017, another TCEQ investigation documented "a chicken waste odor classified as offensive," and another NOV was issued. TCEQ documented sixty-two odor complaints before June 27, 2017. And TCEQ investigators found five violations; however, two violations were not issued NOVs. And in August 2019, TCEQ responded to yet another complaint and the investigator again found a violation. NOVs were issued for both farms.

In January 2017, Frank Blanchard spoke with Sanderson's division manager, Randall Boehme, about the barns. Boehme explained to Blanchard how the chicken barns operated and recommended that he keep his family indoors while the birds were caught for the "health and safety of [his] family." According to Blanchard, Boehme understood that the chicken farms created offensive odors and that "there was no way they could prevent the odors from coming onto [his] property."

Appellees recorded hundreds of odor events on their properties in odor logs, which were admitted into evidence at trial. The logs included dates, duration, and characteristics of the odors invading their properties. Appellees testified the risk of exposure to the odors continuously prevented them from planning and enjoying outdoor activities. They testified that the odors could appear at any moment, which would force them to abandon any outdoor activity and remain inside. However, the odors were intermittent because variations, such as weather

---

[1] Prohibits persons from causing, suffering, allowing, or permitting the emission of air contaminants. TEX. HEALTH & SAFETY CODE ANN. § 382.085(b) (West 2016).

conditions and Appellants' actions, impacted the duration and extent of the odors impeding Appellees' use and enjoyment of their properties.

Each Appellee owned their respective property before the chicken farms were built. The evidence at trial showed that, prior to the chicken farms, each Appellee enjoyed their respective properties. Mersini Blanchard, for example, enjoyed morning walks and the "beautiful smell" of the country. Ronny Snow and his family routinely hosted outdoor family gatherings and enjoyed the outdoors. Tanya Berry enjoyed being outside, caring for her horses, and horse riding with her friends. John Miller and his family also hosted frequent outdoor family events. Emily Martinez's family enjoyed playing outside and routinely hosted larger outdoor gatherings. Kim Riley and her husband regularly entertained friends outdoors. However, after the chicken barns were built, the odors prevented Appellees from enjoying these outdoor activities.

Frank Blanchard testified that he first smelled the offensive odors when visiting his ranch in August or September 2016. His mother told him that she and the neighbors had smelled the odors, which were from the chicken barns and regularly smelled like "roadkill." Mersini Blanchard testified it smelled like "chicken poop and dead animals all together." Mersini testified that the smell made her gag and "sick in [her] stomach" on several occasions. The Blanchards ceased hosting family Christmases at the ranch due to the odors. Frank could not bring his children to the ranch because he was afraid the odors would harm them.

The record reflects that David Blanchard testified via video deposition; however, the court reporter did not transcribe his testimony. The transcript of the deposition is not in the record and has not been provided to this Court. A copy of Appellants' request for the reporter's record is included in the clerk's record. The request is for the entire reporter's record and contains no designation of points for the appeal.[2] Therefore, we must presume the omitted parts of the record are relevant to the disposition of this appeal. *Richards v. Schion*, 969 S.W.2d 131, 133 (Tex. App.—Houston [1st Dist.] 1998, no pet.); *City of Palestine v. LS Equip. Co., Inc.*, No.

---

[2] In *Bennet v. Cochran*, the Texas Supreme Court held that an appellant who filed its points or issues in a separate document from its request for a reporter's record, and approximately two months late, did not waive its right to appeal the legal sufficiency of the evidence supporting the jury's verdict. 96 S.W.3d 227, 229 (Tex. 2002). The Court reasoned that a more flexible approach was warranted because the appellee did not claim he was prejudiced by the delay and was afforded ample time to respond to the appellant's points or issues and designate additional portions of the record. *Id.* However, the Court also reaffirmed that an appellant's complete failure to file a compliant issue statement, as has happened in this case, requires the appellate court to presume the record's omitted portions support the trial court's judgment. *Id.*

12-19-00264-CV, 2020 WL 5047905, at *8 (Tex. App.—Tyler Aug. 26, 2020, no pet.) (mem. op.).

Here, the testimonies from Appellees describe the odors from the chicken barns that caused them discomfort and disrupted the use and enjoyment of their properties. We rely upon the trial court to determine whether each of these individuals is "a person of ordinary sensibilities." *See Pool v. River Bend Ranch, LLC*, 346 S.W.3d 853, 858 (Tex. App.—Tyler 2011, pet. denied). Appellees testified that the odors did not exist before Appellants began operating the chicken barns, the odors entered their properties from the chicken barns, and the odors did not stem from any other agricultural activity. Based upon our review of their testimonies, along with evidence of the NOVs, we conclude that this evidence supports the existence of odor levels caused by the chicken barns that were sufficiently extreme to constitute a nuisance. *See Schneider*, 147 S.W.3d at 269. Therefore, we hold that the evidence is legally sufficient to establish that the chicken farms created a nuisance that interfered with Appellees' use and enjoyment of their respective properties. Appellants' second issue is overruled.

## PERMANENT INJUNCTION

In their first issue, Appellants contend the trial court abused its discretion by entering a permanent injunction because Appellees have an adequate remedy at law and lack imminent harm.

## Standard of Review and Applicable Law

We review the trial court's grant of a permanent injunction for an abuse of discretion. *See Operation Rescue-Nat'l v. Planned Parenthood of Houston & Se. Tex., Inc.*, 975 S.W.2d 546. 560 (Tex. 1998). To be entitled to a permanent injunction, a party must prove (1) a wrongful act, (2) imminent harm, (3) an irreparable injury, and (4) the absence of an adequate remedy at law. *Pike v. Tex. EMC Mgmt., LLC*, 610 S.W.3d 763, 792 (Tex. 2020); *Cypress Creek EMS v. Dolcefino*, 548 S.W.3d 673, 690 (Tex. App.—Houston [1st Dist.] 2018, pet. denied).

A nuisance is a condition that substantially interferes with the use and enjoyment of land by causing unreasonable discomfort or annoyance to persons of ordinary sensibilities attempting to use and enjoy it. *Crosstex N. Tex. Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580, 601 (Tex. 2016). A nuisance is temporary if it is so irregular or intermittent over the period up to filing and

trial that future injury cannot be estimated with reasonable certainty. *Schneider*, 147 S.W.3d at 281. A permanent nuisance is sufficiently constant or regular that future impact can be reasonably evaluated. *Id.*

Categorizing a nuisance as temporary or permanent is a question for the jury. *Id.* at 286. But abatement is a discretionary decision for the judge after the case has been tried and the jury discharged. *Id.* One is only partly dependent on the other: while judges cannot permanently abate a nuisance until jurors decide there is one, a trial judge may decide to abate a nuisance whether it is temporary or permanent and may choose not to abate either even if that is the only remedy requested. *Id.* at 286-87.

## Analysis

Appellants contend that the trial court abused its discretion by entering a permanent injunction because Appellees possess an adequate remedy at law, in that they could have recovered monetary damages for lost use and enjoyment. In support of their position, Appellants rely on the Texas Supreme Court's decision in *Pike v. Tex. EMC Mgmt., LLC*, 610 S.W.3d 763 (Tex. 2020).

Appellants' reliance on *Pike* is misplaced. While *Pike* did hold that a permanent injunction was inappropriate because the plaintiff could have sought to value its lost profits, *Pike* involved misappropriation of trade secrets. *Id.* at 793. It was not a nuisance case and, as such, the Texas Supreme Court did not consider the special nature of nuisances.

Under the general rule, the equitable remedy of injunctive relief is ordinarily available only when the legal remedy of damages will not be adequate. *Holubec v. Brandenberger*, 214 S.W.3d 650, 656 (Tex. App.—Austin 2006, no pet.). However, when the nuisance complained of is of a "recurring nature," an injunction "will lie irrespective of [a] legal remedy at law." *Id.* (citing *Lamb v. Kinslow*, 256 S.W.2d 903, 905 (Tex. Civ. App.—Waco 1953, writ ref'd n.r.e.)). Monetary damages are not always an adequate remedy in situations where the nuisance is of a recurring nature because damages could be recovered only as of the time of the bringing of the action, and a multiplicity of suits would be necessary. *Holubec*, 214 S.W.3d at 656. A party suffers irreparable injury and has no adequate legal remedy if a nuisance is of a recurring nature. *Hall v. Seal*, No. 04-09-00675-CV, 2011 WL 61631, at *3 (Tex. App.—San Antonio Jan. 5, 2011, pet. denied) (mem. op.) (citing *Holubec*, 214 S.W.3d at 656). A nuisance is of a recurring nature if the evidence shows that the author of the nuisance will not cease the nuisance without a

8

court order. *Id*. Whether a nuisance is of a recurring nature is a question for the trial court. *See Hot Rod Hill Motor Park v. Triolo*, 276 S.W.3d 565, 575 (Tex. App.—Waco 2008, no pet.).

Regarding the recurring nature of the nuisance, the trial court made the following findings:

19. Plaintiffs have established an irreparable injury. Defendants have operated and/or allowed to be operated, and intend to continue to allow to be operated, the Activities on Defendants' Properties in a manner that has caused and continues to cause, inter alia, odor pollution to intrude on, near, and/or over Plaintiffs' Properties so as to cause a substantial and unreasonable interference with the use and enjoyment of Plaintiffs' Properties and create a nuisance.

20. There is no adequate remedy at law to grant complete, final, and equal relief to Plaintiffs. Defendants are unwilling and unable to abate the odor pollution that emanates from the operation of Defendants' Properties. The odor pollution from the Activities on Defendants' Properties invades Plaintiffs' Properties so as to create a substantial and unreasonable interference with the use and enjoyment of Plaintiffs' Properties. The odor pollution from the Activities on Defendants' Properties is excessive to an unreasonable degree and constitutes a nuisance. The TCEQ found on multiple occasions that Defendants' Activities were in violation of the Texas nuisance statute codified at 30 Tex. Adm. Code § 101.4 and in violation of Texas Health and Safety Code §§ 382.085(a) and 382.085(b). Despite the foregoing, Defendants deny that a nuisance exists and have either taken no or insufficient measure[s] to reduce the odor pollution, which has been a serial annoyance and interference with the use and enjoyment of Plaintiffs' Properties.

21. Defendants have not reduced the level of their Activities on Defendants' Properties since Defendants began operations and have no intention of doing so now or in the future. On the contrary, Defendants[] admit that if an injunction does not issue, they will continue to conduct their Activities in the future in exactly the same way they have done in the past. The TCEQ's regulatory efforts have had little or no effect on Defendants: the TCEQ issued violations of the nuisance statute to Defendants before Plaintiffs filed this case, after they filed this case, before the temporary injunction hearing, after the temporary injunction hearing, and even shortly before trial. Despite the TCEQ's actions against them, Defendants contend their Activities are not a nuisance, which lacks any credibility.

22. Defendants' Activities, if not enjoined, will continue in the future, rendering a judgment for money damages against one or more Defendants incomplete, ineffectual, and inadequate, such that Plaintiffs have no adequate remedy at law. One or more Defendants cannot respond in money damages. One or more Defendants have failed to report or under-reported taxable income; made misrepresentations to various Texas and federal agencies, and forfeited a corporate charter for failure to pay franchise taxes, a deficiency that was not cured until trial.

Sanderson, via corporate representatives, testified at trial that the Huynhs followed all of Sanderson's policies regarding growing chickens. In fact, Sanderson "approves of everything these growers have done." Edward Chisolm, who is in charge of Sanderson's "live grow out" testified that "there will be absolutely no change to anything with respect to how these chicken farms are operated." This was despite several odor violations from the TCEQ. Thus, the trial court did not abuse its discretion because the evidence established that the nuisance was of a

recurring nature and thereby supported the lack of an adequate legal remedy. *See Hall*, 2011 WL 61631, at *4.

Appellants further argue that the permanent injunction is improper because Appellees do not face any imminent harm. Appellants contend that because the jury found that the nuisance is temporary, it will not recur and, therefore, Appellees face no imminent harm. As explained above, whether a nuisance is recurring is a consideration for the trial court. *See Hot Rod Hill*, 276 S.W.3d at 575; *see also Operation Rescue*, 975 S.W.2d at 554 (question of whether imminent harm exists is a legal question for the court, not the jury). And the trial court was within its discretion to determine the nuisance would recur.

Furthermore, Appellants' argument that a temporary nuisance can never be recurring and, therefore, can never be subject to a permanent injunction is contrary to Texas Supreme Court precedent. The Texas Supreme Court has held that the issuance of a permanent injunction is a discretionary decision for the judge after the case has been tried and the jury discharged. *Schneider*, 147 S.W.3d at 286. "[W]hile judges cannot permanently abate a nuisance until jurors decide there is one, a trial judge may decide to abate a nuisance whether it is temporary or permanent, and may choose not to abate either even if that is the only remedy requested." *Id.* at 286-87; *see also Crosstex*, 505 S.W.3d at 610. Therefore, we reject Appellants' contention that a temporary nuisance can never be subject to a permanent injunction.

Because the trial court did not abuse its discretion in finding that the temporary nuisance is recurring, Appellees face the threat of imminent harm, and the trial court did not abuse its discretion in finding a permanent injunction to be an appropriate remedy. We overrule Appellants' first issue.

## BALANCING OF THE EQUITIES

In their third issue, Appellants contend the balancing of the equities favors dissolving the permanent injunction.

## Applicable Law

In determining whether to grant injunctive relief, a trial court balances the equities and relative hardships on the parties and the public. *See Storey v. Central Hide & Rendering Co.,* 226 S.W.2d 615, 618–19 (Tex. 1950). In balancing the equities, a trial court may compare evidence of harm that could result to the defendant and the public by granting the injunction with

10

the evidence of harm to be sustained by the complainant if the court denies the injunction. *See id*. "If the court finds that the injury to the complainant is slight in comparison to the injury caused the defendant and the public by enjoining the nuisance, relief will ordinarily be refused." *Id*. at 619. A trial court may consider evidence that was presented to the jury or to the judge outside of the presence of the jury. *See Schneider,* 147 S.W.3d at 287. The conclusion that the balance of the equities favors an injunction lies within the trial court's sound discretion. *See Lee v. Bowles,* 397 S.W.2d 923, 929 (Tex. Civ. App.—San Antonio 1965, no writ); *Hall*, 2011 WL 61631, at *3.

**Analysis**

The trial court made the following findings regarding the weighing of the equities:

11. In learning about the operating structure of Defendant Sanderson and other poultry operations, the Court is aware that Defendant Sanderson has other growers that could absorb the flocks currently being grown by the Defendant Growers with little economic impact to Defendant Sanderson should the Court grant a permanent injunction.

12. The Court also heard conflicting, inconsistent and "concerning" testimony by the Defendant Growers themselves. For example, the Court heard inconsistent and conflicting testimony by the Defendant Growers as to who runs the farms, who signed certain governmental documents, answers given on certain governmental documents, who receives the government subsidies, where the Defendant Growers live, whether federal tax returns were filed, who was answerable to Defendant Sanderson in the operation of the barns, what steps should be taken to abate odors, the cleaning and replacement of chicken litter, etc. The list of inconsistent and conflicting testimony by the Defendant Growers could continue at length.

. . .

17. In evaluating Plaintiffs' request for a permanent injunction to abate what the jury has already found to be a nuisance, the Court has weighed all the competing interests to include: the credibility and positioning of the parties, the business model of the Defendant Growers and Defendant Sanderson, economic impact to the parties, impact to the food supply, the COVID-19 virus, land values of Plaintiffs and Defendants, the effect on the poultry industry in general, Defendants' plans to keep growing flocks into the foreseeable future, contractual relations between the Defendant Growers and Defendant Sanderson, the State's policy of free enterprise and business, and a myriad of other factors.

18. Based on the jury's findings and considering these factors, the Court finds that Plaintiffs are entitled to permanent injunctive relief. The Court understands that this effectively shuts down the entire operation of Defendant Huynhs at the Malakoff location. In balancing the equities, the Court considered more narrow options. However, based on the business model of this particular operation, the voluminous testimony about how chicken barns in this particular business operate, the contractual relationship between Defendant Sanderson and Defendant Huynhs, and the feasibility and economics of shutting just one of the two farms down or reducing flock size, the Court finds that a more narrow injunction is not economic or feasible, nor would it be equitable to do so partly based on weighing the behavior and credibility of Defendant Huynhs versus the Plaintiffs.

. . .

22. Defendants' Activities, if not enjoined, will continue in the future, rendering a judgment for money damages against one or more Defendants incomplete, ineffectual, and inadequate, such that Plaintiffs have no adequate remedy at law. One or more Defendants cannot respond in money damages. One or more Defendants have failed to report or under-reported taxable income; made misrepresentations to various Texas and federal agencies, and forfeited a corporate charter for failure to pay franchise taxes, a deficiency that was not cured until trial.

Appellants argue the jury found that Appellees "face little to no harm if the farms remain operational." However, the jury found that the nuisance decreased the value of Appellees' properties by a combined $5,986,500.00, which was not awarded because the jury did not find the nuisance to be permanent. Additionally, as discussed above, the evidence supports the trial court's findings that Appellees would suffer irreparable harm.

Appellants further assert that "[a]llowing the permanent injunction to stand would wreak havoc" on Appellants and that "public interest also favors dissolving the trial court's injunction." However, Sanderson's corporate representative testified that Sanderson has 900 chicken barns supplying two East Texas processing plants. And Sanderson has enough capacity that losing these two farms will not decrease the number of chickens it can grow. According to Sanderson, other barns will grow the chickens that would have been placed with the Huynhs. As a result, the evidence supports the trial court's finding that the injunction would have little economic impact on Sanderson. The trial court also weighed the equities against Appellants Huynh and Nguyen. In doing so, the trial court considered the documented fraud in obtaining governmental approval and subsidies along with their refusal to attempt to stop the nuisance.

As a result, we reject Appellants' contention that balancing of the equities favors dissolving the permanent injunction. Appellants' third issue is overruled.

## BREADTH OF THE INJUNCTION

In a footnote, Appellants urge that if the injunction is upheld, it is overbroad because it enjoins all Appellants and attempts to bind non-parties.

In relevant part, the injunction states as follows:

It is therefore ordered, adjudged, and decreed that Defendants and Defendants' Affiliates, singularly, collectively, and disjunctively:

1.        on or before August 1, 2020, shall cease and desist from conducting and from allowing any other person to conduct any of the Activities on Defendants' Properties or on any other real

12

property that is subject to Defendants' ownership and control within 5 (five) miles of any boundary of Plaintiffs' Properties, except for the remedial actions ordered herein;

2. after August 1, 2020, are permanently enjoined from conducting and from allowing any other person to conduct any of the Activities on Defendants' Properties or on any other real property that is subject to Defendants' ownership or control within 5 (five) miles of any boundary of Plaintiffs' Properties, except for the remedial actions ordered herein;

. . .

5. after August 1, 2020, are permanently enjoined from conducting and from allowing any other person to conduct any Similar Activities on Defendants' Properties or on any other real property that is subject to Defendants' ownership or control within 5 (five) miles of any boundary of Plaintiffs' Properties.

The rules governing injunctive relief provide that an injunction is binding on "parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise." *See **Hsin-Chi-Su v. Vantage Drilling Co.**,* 474 S.W.3d 284, 296 (Tex. App.—Houston [14th Dist.] 2015, pet. denied); TEX. R. CIV. P. 683. And the record reflects that the jury found Appellants Sanderson, Steve Huynh, and the two LLCs each caused a temporary nuisance to each Plaintiff. Appellants Yvonne Huynh, Timmy Huynh, and Thinh Nguyen are the owners of record of the LLC. The record further reflects that these Appellants were either officers, agents, servants, employees, or persons in active concert with the other Appellants. Nor does the injunction attempt to bind non-parties. The injunction is expressly limited to Appellants and specifically prevents Appellants from creating new LLCs or other corporate entities or moving locations to conduct a chicken farm within five miles of Appellees. Accordingly, this contention in Appellants' footnote is overruled.

## DISPOSITION

Having overruled Appellants' first, second and third issues, we ***affirm*** the trial court's judgment. All pending motions are overruled as moot.

BRIAN HOYLE
Justice

Opinion delivered July 30, 2021.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

13



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**JULY 30, 2021**

**NO. 12-20-00198-CV**

**STEVE HUYNH, INDIVIDUALLY, YVONNE HUYNH, INDIVIDUALLY HUYNH POULTRY FARM, LLC D/B/A STEVE THI HUYNH POULTRY FARM D/B/A HUYNH POULTRY FARM, T & N POULTRY FARM, LLC, THINH BAO NGUYEN, INDIVIDUALLY, TIMMY HUYNH POULTRY FARM, TIMMY HUYNH, INDIVIDUALLY AND SANDERSON FARMS, INC.,**
Appellants
V.
**FRANK BLANCHARD, ET AL AND RONNY SNOW, ET AL,**
Appellees

Appeal from the 392nd District Court
of Henderson County, Texas (Tr.Ct.No. CV17-0247-392)

THIS CAUSE came to be heard on the oral arguments, appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, all appellate costs are assessed against Appellants, **STEVE HUYNH, INDIVIDUALLY, YVONNE HUYNH, INDIVIDUALLY HUYNH POULTRY FARM, LLC D/B/A STEVE THI HUYNH POULTRY FARM D/B/A**

**HUYNH POULTRY FARM, T & N POULTRY FARM, LLC, THINH BAO NGUYEN, INDIVIDUALLY, TIMMY HUYNH POULTRY FARM, TIMMY HUYNH, INDIVIDUALLY AND SANDERSON FARMS, INC.,** and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*