NO. 12-09-00291-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *GARLAND C. POOL, JR., AND DOLORES POOL HERRINGTON, s/p/a DOLORES HOPSON, APPELLANTS* | § | *APPEAL FROM THE 392ND* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *RIVER BEND RANCH, LLC, A DELAWARE LIMITED LIABILITY COMPANY, APPELLEE* | § | *HENDERSON COUNTY, TEXAS* |

### *OPINION*

Garland C. Pool, Jr. and his sister, Dolores Pool Herrington (collectively Appellants), appeal the trial court's issuance of a permanent injunction prohibiting them from operating an all-terrain vehicle (ATV) park on their 3,000 acre ranch. In two issues, Appellants contend that the trial court erred in determining that the noise from their ATV park constituted a nuisance and that the injunction was overbroad. We affirm.

### BACKGROUND

Pool Ranch is located three and one-half miles northeast of Athens, Texas. It has been owned by the Pool family since the nineteenth century. Herrington testified that her family began using it for camping and recreational activities in the 1980s. Initially, these activities included the operation of dirt bikes, but later the operation of ATVs became prevalent. Herrington stated that her children and nephews began bringing their friends to use the trails that had developed on the ranch over the years. By 2003, Appellants decided to open up the ranch to the public as a commercial ATV park. The operation of the commercial ATV park continued to expand until 2007. According to Herrington, in 2007, Appellants each made $4,000 from the ATV park, which was the most they had made in any one year.

In 2007, River Bend Ranch, L.L.C., which was co-owned by Edwin L. Cox, Jr. and Walter Umphrey, filed suit to enjoin Appellants from operating the ATV park. In 1973, Cox had

begun purchasing the approximately 2,000 acres adjoining Pool Ranch, which comprised River Bend Ranch. In their pleadings, Cox and Umphrey alleged that the ATV park had interfered with the peacefulness, tranquility, quietness, solitude, and enjoyment of their land and had caused discomfort and annoyance to persons of ordinary sensibilities residing in the community.

Bobby Williams, who had purchased his property adjoining Pool Ranch in 1995, intervened in the suit to enjoin the use of Pool Ranch as a commercial ATV park. Williams, who had retired from the concrete company TXI, stated that he had moved to the community to raise cattle and have a little peace and quiet before he died. He contended that the peace and quiet of the community had disappeared with the appearance of the commercial ATV park in the area.

Following a bench trial, the trial court entered an order that, among other things, enjoined Appellants from engaging in the following acts on Pool Ranch:

(1) Operating or allowing others to operate a commercial all-terrain vehicle park (which specifically shall include, but not be limited to, a prohibition on the operation of any commercial activity, that has as a substantial part of that venture the act of allowing persons to operate motorized vehicles, all terrain vehicles of any nature, or motorcycles upon the property);

(2) Operating or allowing others to operate any commercial cross country racing event;

(3) Operating or allowing others to operate a commercial concert;

(4) Allowing groups of more than 50 persons to bring alcohol[ic] beverages onto the property for personal consumption at any commercial event;

(5) Allowing minors to have possession of or to consume alcoholic beverages upon the property outside the presence of their parents;

(6) Allowing groups of more than 75 persons to attend or participate in any commercial event where the consumption of alcoholic beverages is allowed; or

(7) Conducting or allowing others to conduct any mass gathering in violation of Chapter 751 of the Texas Health & Safety Code.

This appeal followed.[1]

## EVIDENTIARY SUFFICIENCY–NUISANCE

In their first issue, Appellants contend that the evidence is legally and factually insufficient to support the trial court's finding that their conduct created a nuisance.

---

[1] In addition to the operation of a commercial ATV park on their property, Appellants had leased their property out for use in conjunction with two independent events—the Texas Redneck Games and the Mudigras Games. Both of these events were ultimately controversial. Pool testified that Appellants would no longer have events such as the Redneck or Mudigras Games, but that he wanted to continue using Pool Ranch as a commercial ATV park. On appeal, Appellants attack the injunction only for the restrictions it places on using Pool Ranch as a commercial ATV park. We therefore address the issues only as they relate to the trial court's enjoining the operation of a commercial ATV park.

## Standard of Review

When reviewing a finding of fact for legal sufficiency, we may set aside that finding of fact only if the evidence at trial would not enable a reasonable and fair minded fact finder to make the finding. *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). In making this determination, we must credit favorable evidence if a reasonable fact finder could, and disregard contrary evidence unless a reasonable fact finder could not. *See id*. The fact finder is the sole judge of the credibility of the witnesses and the weight to be assigned to their testimony. *See id*. at 819. The fact finder is free to believe one witness and disbelieve another, and reviewing courts may not impose their own opinions to the contrary. *See id*. Further, a fact finder "may disregard even uncontradicted and unimpeached testimony from disinterested witnesses" where reasonable. *See id*. at 819–20. Accordingly, we must assume that the fact finder chose what testimony to disregard in a way that favors the verdict. *See id*. at 820. Moreover, where conflicting inferences can be drawn from the evidence, it is within the province of the fact finder to choose which inference to draw, so long as more than one inference can reasonably be drawn. *See id*. Therefore, we must assume the fact finder made all inferences in favor of the verdict, if a reasonable person could do so. *See id*.

Regarding factual sufficiency challenges, when the party who had the burden of proof on an issue in a bench trial complains about the absence of a finding of fact by the trial court, we treat the absence of the finding as a refusal by the trial court to find the fact from a preponderance of the evidence. *Canal Ins. Co. v. Hopkins*, 238 S.W.3d 549, 557 (Tex. App.– Tyler 2007, pet. denied). When the party who had the burden of proof on an issue asserts that the trial court's refusal to find the fact is contrary to the evidence, we must overrule the complaint unless we determine that, based on our consideration of all of the evidence, the refusal is so contrary to the great weight and preponderance of the evidence that it is manifestly unjust. *See id*.

When reviewing factual sufficiency issues arising from a bench trial, we remain mindful that the trial court, as the trier of fact, is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Id*. The trial court may take into consideration all of the facts and surrounding circumstances in connection with the testimony of each witness and accept or reject all or any part of that testimony. *Id*. Where enough evidence is before the trial court so that reasonable minds could differ on the meaning of the evidence, or the inferences and conclusions to be drawn from the evidence, we may not substitute our judgment for that of the trial court. *Id*. at 558.

## Governing Law

A "nuisance" is a condition that substantially interferes with the use and enjoyment of land by causing unreasonable discomfort or annoyance to persons of ordinary sensibilities. *Schneider Nat'l Carriers, Inc. v. Bates*, 147 S.W.3d 264, 269 (Tex. 2004). Courts have divided actionable nuisance into three classifications: (1) negligent invasion of another's interest; (2) intentional invasion of another's interest; or (3) other conduct, culpable because abnormal and out of place in its surroundings, that invades another's interests. *See City of Tyler v. Likes*, 962 S.W.2d 489, 503 (Tex. 1997). Noise, if sufficiently extreme, may constitute a nuisance. *See Schneider*, 147 S.W.3d at 269; *see also Kane v. Cameron Int'l Corp.* 331 S.W.3d 145, 148 (Tex. App.–Houston [14th Dist.] 2011, no pet.) (nuisance may arise when person's senses are physically assaulted).

## Evidence

Cox testified that the noise from the ATV events on Pool Ranch created so much noise that he changed the way he used River Bend Ranch. He further testified that the largest lake on his property operated as an echo chamber for the ATV noise. Cox stated that the ATV events had changed the way he could use his ranch because he refused to subject any of his guests to the noise from the ATVs. Cox indicated that this noise had become so bad that he could not use his property during one of the ATV events.

Don Cardin, the ranch manager for River Bend Ranch, stated that the biggest issues for him were the noise of the ATVs and the stereos on the ATVs. However, he indicated that the motorcycle noise was possibly worse because it had a higher pitch and was "wangier"[2] than the noise from the ATVs. Cardin stated that noise was the biggest problem for him, but that there were also issues with dust. Cardin further indicated that the lake magnified the noise. Finally, Cardin noted that there was an average of over one hundred ATVs per event at Pool Ranch.

Williams, whose house is one hundred fifty feet from Pool Ranch, described the noise level from an ATV event at Pool Ranch as being somewhere between a jet airplane and a helicopter. Williams stated that most of the noise was from the ATVs. Williams further stated that the noise from these events at night could be so dreadful that it would "stand you up on your end[.]"

Nancy Saunders, who lives directly across from Pool Ranch, also complained about the noise from the ATVs in her testimony. Saunders stated that the motorcycles were even louder than the ATVs. Saunders further stated that she and her husband did not feel comfortable leaving their property during the events on Pool Ranch. Saunders testified that she and her

---

[2] We are not familiar with this term. But it is apparent to us, from the context in which the term is used, that it is intended to be pejorative.

4

husband also did not feel comfortable entertaining friends during these ATV events. Saunders further testified that the noise usually ended around midnight, but would begin anew in the morning as early as 5:30 a.m.

John Tarter testified that he lives about two miles from Pool Ranch. Tarter further testified that there was considerable noise at all hours of the day and night when the ATV events were held. Tarter also complained about the excessive traffic, which, according to him, the small, oil-topped roads in the community were unable to handle.

Joe Graham testified that he has lived about one-half mile from Pool Ranch for thirty-eight years. Graham stated that the ATV events caused a lot of problems for the community, including high noise levels, drunken driving, and sanitation problems. Graham described the noise as "just about like a helicopter over your house, . . . that goes on pretty well all night long" as well as during the day. Graham testified that the noise at night could be "unbearable." Graham further testified that when there was not an event occurring at Pool Ranch, there would be "no noise whatsoever" in the community.

Shea Phillips, who lives approximately one-quarter mile from Pool Ranch, testified that he has known the Pools and has been their neighbor his entire life. Phillips further testified that the ATV events at Pool Ranch caused minimal noise and did not affect his use of his land. Phillips indicated that he could hear the events at Pool Ranch "a little bit" from his property, but that he could not hear any noise when he was inside his house. Phillips stated that he did not have trouble sleeping during the ATV events on Pool Ranch.

Roger Blair, who lives in Weatherford, Texas, testified that he has attended most of the ATV events on Pool Ranch since they began in 2003. Blair further testified that he owns a cabin approximately 750 feet from the entrance of Pool Ranch. Blair stated that he does not have any trouble sleeping at night when he stays at his cabin because "you can barely hear anything from over there." Blair further stated that from inside his cabin, he could not hear any activities at Pool Ranch.

Mark Jordan served as the Chief Deputy for the Henderson County Sheriff's Department during 2006 and 2007. Jordan testified that he had worked on Pool Ranch as private security during the ATV events from 11:00 p.m. to 7:00 a.m. Jordan further testified that the noise would continue for between two and four hours after he arrived for his shift. Jordan stated that he would not describe the noise as loud, but rather as normal to someone who had ever owned a four-wheeler. Jordan further stated that there was not any constant noise that he would describe as annoying.

Wick Gabbard, an investigator for the Henderson County Sheriff's Department, testified that he had also worked on Pool Ranch as private security for one ATV event from 11:00 p.m. to

7:00 a.m. Gabbard testified that the night he worked there, it had been very cold and people were riding predominantly during the day. Gabbard further testified that the ATVs he heard were "relatively normal sounding" and that it was not a noise that concerned him.

**Discussion**

In support of its judgment, the trial court made the following findings of fact with regard to the alleged nuisance caused by Appellants as a result of their using their ranch for an ATV park:

> (21) All of the all terrain vehicle events and motocross events that occurred on the Defendants' property caused unreasonable discomfort to the Plaintiff and Intervenors.
>
> (22) All of the all terrain vehicle events and motocross events that occurred on the Defendants' property are annoying to persons of ordinary sensibilities.
>
> (23) All of the all terrain vehicle events and motocross events that occurred on the Defendants' property substantially interfered with the Plaintiff's and Intervenors' use and enjoyment of the property they own.
>
> . . . .
>
> (30) The acts that have occurred on the Defendants' property are not normal for the community that surrounds that land.

Here, the respective testimonies of Cox, Cardin, Williams, Saunders, Tarter, and Graham describe noise and activities from the ATV events at Pool Ranch that, for each of them, caused discomfort and annoyance. We rely upon the trial court to determine whether each of these individuals is "a person of ordinary sensibilities." Based upon our review of their testimonies, we conclude that this evidence supports the existence of noise levels caused by ATV events that were sufficiently extreme to constitute a nuisance. *See **Schneider***, 147 S.W.3d at 269.

Nonetheless, reasonable minds could have differed on the meaning, inferences, and conclusions to be drawn from the aforementioned evidence. But we note that the trial court was entitled to disregard the contrary evidence offered due to the relationship to Appellants of those witnesses testifying that the operation by Appellants of a commercial ATV park caused them no discomfort and annoyance. Based on our review of the entirety of the record, we conclude that the evidence contrary to the finding of a nuisance is not so against the great weight and preponderance of the evidence supporting the trial court's finding that its determination was manifestly unjust. Accordingly, we hold that there is both legally and factually sufficient evidence to establish that the ATV events on Pool Ranch created a nuisance in the community. Appellants' first issue is overruled.

6

In their second issue, Appellants argue that the trial court abused its discretion by issuing an overly broad permanent injunction that completely enjoined them from conducting any commercial ATV events on Pool Ranch. Throughout the trial, Appellants contended that they did not allow any unlawful incidents to occur on their property during these ATV events and that they were entitled to use the property as they wished. On appeal, Appellants contend that, even if the injunction was proper, it should have been limited so as to permit them to operate a commercial ATV park on Pool Ranch in the same manner in which they had operated a commercial ATV park there from 2003 to 2006.

## Standard of Review

The decision to grant a permanent injunction is ordinarily within the sound discretion of the trial court. *See Vaughn v. Drennon*, 202 S.W.3d 308, 313 (Tex. App.–Tyler 2006, no pet.). A reviewing court should reverse an order granting injunctive relief only if the trial court abused its discretion. *See Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). We may not substitute our judgment for that of the trial court by vacating or modifying an injunction simply because we would have decided otherwise. *See Mabrey v. Sandstream, Inc.,* 124 S.W.3d 302, 309 (Tex. App.–Fort Worth 2003, no pet.). An abuse of discretion does not occur as long as there is some evidence to support the trial court's decision to grant the injunction. *Id*. An abuse of discretion does not exist where the trial court bases its decision on conflicting evidence. *Id*.

## Governing Law

Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail and not by reference to the complaint or other document, the act or acts sought to be restrained; and is binding only upon the parties to the action, their officers, agents, servants, employees and attorneys, and upon those persons in active concert or participation with him who receive actual notice of the order by personal service or otherwise. TEX. R. CIV. P. 683. Because an injunction is an equitable remedy, the trial court weighs the respective conveniences and hardships of the parties and balances the equities. *Vaughn*, 202 S.W.3d at 313. The trial court must balance the equities before issuing an injunction, considering injury to (1) the defendant and the public if the injunction is granted and (2) the complainant if the injunction is denied. *See Hot Rod Hill Motor Park v. Triolo*, 276 S.W.3d 565, 568 (Tex. App.–Waco 2008, no pet.) (citing *Storey v. Cent. Hide & Rendering Co*., 148 Tex. 509, 226 S.W.3d 615, 618–19 (1950)). An injunction should be broad enough to prevent a repetition of the evil to be corrected. *Webb v. Glenbrook Owners Assoc., Inc.*, 298 S.W.3d 374, 383 (Tex. App.–Dallas 2009, no pet.). An injunction must not be

so broad, however, that it enjoins a defendant from activities that are lawful and the proper exercise of his rights. *Id*.

A business that is lawful in and of itself may become a nuisance because of the locality in which it is carried on. *See Storey*, 226 S.W.2d at 618. A business may also be a nuisance because the place where it is located is uncongenial to that type of enterprise. *Id*. The law does not allow one to be driven from his home or compelled to live in substantial danger or discomfort even though the danger or discomfort is caused by a lawful and useful business. *Id*. The right to acquire a known property and to deal with it and use it as the owner chooses, so long as the use harms nobody, is a natural right. *Spann v. City of Dallas*, 235 S.W. 513, 515 (Tex. 1921). However, it is a right that takes into account the equal rights of others, for it is qualified by the obligation that the use of the property shall not be to the prejudice of others. *Id*.

## Discussion

In the case at hand, the trial court found that the commercial ATV park operated on Pool Ranch was a nuisance to its neighbors and the community. Based on our review of the record, there was no evidence before the court that established that these commercial ATV events were any less a nuisance in 2007 than they were in 2003. Further, there was no evidence in the record that demonstrated what number of ATVs or motorcycles in operation would not constitute a nuisance to the community. Without this evidence, there was no basis upon which the trial court could craft an injunction that eliminated the nuisance caused by the excessive noise, short of prohibiting the commercial ATV park on Pool Ranch in its entirety.[3]

The evidence before the trial court was that the community was one of tranquility before the commercial ATV park began operating on Pool Ranch. Individuals living in a rustic area do not forfeit their right to continued enjoyment of their serenity because a neighboring landowner desires to make a relatively small sum of money operating a commercial ATV park. Based on our review of the trial court's injunction and the record as a whole, we conclude that the trial court carefully weighed the equities of the two sides and made the appropriate decision to restore the community to the peace and quiet it enjoyed before the commercial ATV park began operating on Pool Ranch in 2003. Accordingly, we hold that the trial court's injunction barring the operation of a commercial ATV park on Pool Ranch was not overly broad. Appellants' second issue is overruled.

---

[3] We note that the injunction does not prevent Appellants and their families from operating their personal ATVs on the property.

**DISPOSITION**

Having overruled Appellants' first and second issues, we ***affirm*** the trial court's judgment.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered July 13, 2011.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)