# NO. 12-12-00259-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *JOHN REEVES, MELBA REEVES, AND NAN MILLER, APPELLANTS* | § | *APPEAL FROM THE THIRD* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *ROBERT HOOTON, APPELLEE* | § | *ANDERSON COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

John Reeves, Nan Miller, and Melba Reeves (Appellants) appeal the trial court's judgment in favor of Robert Hooton in which the trial court ordered Appellants to permanently desist and refrain from firing, detonating, operating, or using propane cannons or exploders on Melba's land. Appellants raise two issues on appeal. We affirm.

## BACKGROUND

Melba[1] and Hooton own adjoining property in rural Anderson County, Texas. Miller is Melba's daughter and manages the land for her. John leases Melba's land and farms it. Specifically, John grows food for public consumption.

John had problems with deer and hogs decimating his crops. To combat this problem, John began using a propane cannon. A propane cannon creates an extremely loud noise when it discharges, and John used the cannon night and day during the growing season. Because of the noise, Hooton could not enjoy his property.

---

[1] Melba died while this case was pending. For ease of reference, we refer to the land as her land rather than that of her estate.

Hooton complained to John, and John moved the propane cannon farther away from Hooton's land. But Hooton could still hear the noise from the cannon and could not sleep because of the noise. He began sleeping in a bedroom that was the greatest distance from the noise and placed blankets on the wall in an attempt to muffle the noise. But he could still hear the noise, and it bothered him. Unable to resolve the issue, Hooton filed the instant suit alleging that Appellants had created a nuisance through John's use of the propane cannon.

Appellants denied Hooton's allegations and asserted various affirmative defenses. Appellants contended that a nuisance action based on John's use of the propane cannon was prohibited because (1) he had conducted an agricultural operation on the property for more than one year prior to the date that Hooton brought his suit and (2) the conditions or circumstances constituting the basis for the nuisance action had existed substantially unchanged since the established date of operation.[2] Appellants filed a motion for summary judgment based on their affirmative defense under Section 251.004. The trial court determined that a fact issue existed as to whether the conditions or circumstances constituting the basis for Hooton's nuisance action had existed substantially unchanged since the established date of operation.

The matter proceeded to a jury trial. Ultimately, the jury found that John had created a nuisance through his use of the propane cannon and that the conditions or circumstances constituting the basis for the nuisance action had not existed substantially unchanged since the established date of operation. Based on the jury's verdict, the trial court issued an injunction by which it ordered Appellants to permanently desist and refrain from firing, detonating, operating, or using propane cannons or exploders on Melba's land. This appeal followed.

## FACTUAL SUFFICIENCY

In their first issue, Appellants argue that the evidence is factually insufficient to support the jury's finding that the conditions or circumstances constituting the basis for the nuisance action have not existed substantially unchanged since the established date of operation.[3]

---

[2] TEX. AGRIC. CODE ANN. § 251.004(a) (West 2004).

[3] This finding relates to Appellants' affirmative defense under the Right to Farm Act. *See* TEX. AGRIC. CODE ANN. § 251.004.

2

## Standard of Review

When a party attacks the factual sufficiency of an adverse finding on an issue on which it has the burden of proof, it must establish that the adverse finding is against the great weight and preponderance of the evidence. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). In making that determination, we consider and weigh all the evidence, not just that evidence which supports the verdict. *See Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998). We can set aside the verdict only if it is so contrary to the overwhelming weight of the evidence that it is clearly wrong and unjust. *See id.*; *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

When reviewing factual sufficiency issues, we are mindful that the factfinder is the sole judge of the credibility of the witnesses. *See Canal Ins. Co. v. Hopkins*, 238 S.W.3d 549, 557 (Tex. App.–Tyler 2007, pet. denied). Accordingly, we may not pass on the witnesses' credibility or substitute our judgment for that of the jury, even if the evidence would clearly support a different result. *See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003); *Ellis*, 971 S.W.2d at 407. If we conclude that the evidence is factually insufficient, we must clearly state why the jury's finding is insufficient or is so against the great weight and preponderance of the evidence as to be manifestly unjust. *See Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986).

## Nuisance from an Agricultural Operation

A nuisance is a condition that substantially interferes with the use and enjoyment of land by causing unreasonable discomfort or annoyance to persons of ordinary sensibilities attempting to use and enjoy it. *Schneider Nat'l Carriers, Inc. v. Bates*, 147 S.W.3d 264, 269 (Tex. 2004); *Warwick Towers Council of Co-Owners v. Warwick, L.P.*, 298 S.W.3d 436, 444 (Tex. App.– Houston [14th Dist.] 2009, no pet.). "Nuisance" refers to a kind of damage done, rather than to any particular type of conduct. *City of Tyler v. Likes*, 962 S.W.2d 489, 504 (Tex. 1997). A private nuisance affects an individual or a small number of individuals rather than the public at large. *See Walker v. Tex. Elec. Serv.*, 499 S.W.2d 20, 27 (Tex. App.–Fort Worth 1973, no writ). An actionable nuisance may arise from an invasion of another's interests attributable to activity that is intentional, negligent, or abnormal and out of place in its surroundings. *Warwick*, 298 S.W.2d at 444.

The legislature passed the Right to Farm Act "limiting the circumstances under which agricultural operations may be regulated or considered to be a nuisance." TEX. AGRIC. CODE

3

ANN. § 251.001 (West 2004); ***Holubec v. Brandenberger***, 111 S.W.3d 32, 35 (Tex. 2003). Under the Right to Farm Act, a nuisance is not actionable against an agricultural operation that has been lawfully in operation for one year or more prior to the date on which the action is brought so long as the conditions or circumstances constituting the basis for the nuisance action have existed substantially unchanged since the established date of operation. *See* TEX. AGRIC. CODE ANN. § 251.004. An agricultural operation includes producing crops for human food. ***Id.*** § 251.002(1) (West Supp. 2012). The established date of operation is the date on which an agricultural operation commenced operation. ***Id.*** § 251.003 (West 2004).

**Application**

The focus of our inquiry is whether there is factually sufficient evidence to support that John did not use the propane cannon in substantially the same manner for one year or more prior to Hooton's filing suit. *See **Holubec***, 111 S.W.3d at 38 ("[T]he relevant inquiry is whether the conditions or circumstances constituting the basis for the nuisance action have existed for more than a year."). The testimony on this point was conflicting. Moreover, with regard to the placement of the propane cannon, it was particularly vague and equivocal.[4] Hooton initially testified that he did not hear the propane cannon until 2009. But he later equivocated, claiming that John was not using a propane cannon until that time. Hooton further testified that he saw John using the cannon very close to Hooton's property. Hooton stated that he kept logs of the cannon discharges made in 2010 and 2011, and those logs were introduced into evidence. According to the logs, John caused the propane cannon to discharge as frequently as every minute and thirty-seven seconds. The logs further indicate that on several other occasions, John caused the propane cannon to discharge every five minutes or less.

Hooton's sister, Sandy Hodge, similarly testified that she first heard the propane cannon approximately two years before the trial or sometime in the spring of 2010.

---

[4] During much of the testimony, the witnesses were asked questions based on a map. However, the map is not a part of the record and, even if it were, it would not help us decipher much of the testimony. For instance, John testified as follows:

Q. No. Let's talk about -- Right here. You put it in that at times, don't you?
A. No, sir. Down a little bit.
Q. Right there?
A. You're kind of shaky there.
Q. I beg your pardon? Walk down there and show the jury where you placed this cannon.
A. (Witness complies.) I've had it here, and here, and approximately in here.

4

John testified that he used the propane cannon beginning in 2006 or 2007. He later testified that he did not purchase the propane cannon that he used on Melba's property until 2007. He conceded that he did not cultivate the field nearest Hooton's property until 2007. When asked where he used the propane cannon in 2007, John admitted that he could not remember. He further conceded that if he moved the propane cannon closer to Hooton's property and had it discharging every minute and a half to two minutes, that would amount to a substantial change. John later claimed that he did not use the propane cannon any differently in 2009 than he had used it in 2007 and 2008.

Miller testified that she first heard the cannon in 2006 or 2007. Several neighbors testified, but none could agree on a date that John began using the propane cannon. Some testified that he used it in 2006 or 2007; others testified he used it later.

We have examined the entirety of the record and have considered and weighed all of the evidence. Based on our review of the record, we cannot conclude that the jury's finding is so against the great weight and preponderance of the evidence as to be manifestly unjust. Accordingly, we hold that the evidence is factually sufficient to support the jury's determination that the conditions or circumstances constituting the basis of Hooton's nuisance action had not existed substantially unchanged since the established date of operation. Appellants' first issue is overruled.


## INJUNCTION

In their second issue, Appellants contend that the trial court abused its discretion by enjoining their use of a propane cannon on any portion of Melba's land.

**Standard of Review and Applicable Law**

We review a trial court's decision to grant a permanent injunction under an abuse of discretion standard. *Pool v. River Bend Ranch, L.L.C.*, 346 S.W.3d 853, 859 (Tex. App.–Tyler 2011, pet. denied). Because an injunction is an equitable remedy, a trial court weighs the respective conveniences and hardships of the parties and balances the equities. *Vaughn v. Drennon*, 202 S.W.3d 308, 313 (Tex. App.–Tyler 2006, no pet.). The trial court does not abuse its discretion where it bases its decision on conflicting evidence. *Pool*, 346 S.W.3d at 859. Indeed, a trial court does not abuse its discretion as long as there is some evidence to support its

decision to grant the injunction, and we may not substitute our judgment for that of the trial court simply because we would have decided otherwise. *Id*.

Orders granting injunctions must be specific and describe in reasonable detail the act sought to be restrained. *See* TEX. R. CIV. P. 683. An injunction must be definite, clear, and concise, leaving the person enjoined in no doubt about his duties, without calling on him for inferences or conclusions about which persons might differ. *See id*.; *Vaughn*, 202 S.W.3d at 316. An injunction should be broad enough to prevent a repetition of the evil to be corrected, but not so broad that it enjoins a defendant from activities that are lawful and the proper exercise of his rights. *Pool*, 346 S.W.3d at 860.

The right to use property as the owner chooses, so long as the use harms no one, is a natural right. *See id*. However, it is a right that takes into account the equal rights of others and is qualified by the obligation that the use of the property shall not be to the prejudice of others. *Id*.

## Application

Appellants argue that the trial court crafted the injunction too broadly, and instead, they should be enjoined, if at all, from firing the propane cannon on the "east end" of Melba's property. Specifically, Appellants note that (1) Hooton testified that he did not hear the propane cannon before 2009, and John and others testified that John was using the propane cannon before then, and (2) Hooton's expert witness testified that if the propane cannon were moved a half mile away or more, the sound level would not be a problem for Hooton.

Hooton testified that he heard the propane cannon even after John moved it farther away. He also testified that the noise "was never comfortable," but instead, became merely "more tolerable." Hooton conceded that if John used the propane cannon in a location where he could not hear it, he would not care about its use. But Hooton never testified that there were portions of Melba's land where John could use the cannon and Hooton could not hear it. In fact, John testified that Hooton should be able to hear the cannon from a mile away and that Hooton should be able to hear the cannon even if he used it in the areas farthest from Hooton's property. Therefore, the trial court's decision to enjoin Appellants from using the propane cannon on any part of Melba's property is supported by the evidence. *See Pool*, 346 S.W.3d at 859.

Additionally, the trial court must weigh all the conveniences and hardships for the parties when determining whether and at what level to issue an injunction. *Vaughn*, 202 S.W.3d at 313.

6

While the evidence was controverted somewhat by Appellants, Hooton presented significant evidence that the propane cannon was ineffective in protecting John's crops from invasions by deer and hogs. Hooton also presented testimony that John's pea crop was not damaged by birds, the animal that propane cannons are most effective in deterring.

Finally, John made it clear that he did not care that the propane cannon was a nuisance to his neighbors. He was adamant that he leased the property and could do what he wanted on it, including using a propane cannon day and night. He contended that he would consider ceasing his use of the propane cannon if a magistrate threatened to prosecute him.

Based on our review of the entire record, we conclude that the trial court did not abuse its discretion in enjoining Appellants from using a propane cannon on any part of Melba's land. The trial court weighed the equities of the two sides and crafted an injunction that is supported by the evidence. Accordingly, we hold that the trial court's injunction that Appellants permanently desist and refrain from firing, detonating, operating, or using propane cannons or exploders on Melba's land is not overly broad. Appellants' second issue is overruled.

## DISPOSITION

Having overruled Appellants' first and second issues, we **affirm** the trial court's judgment.

**BRIAN HOYLE**
Justice

Opinion delivered August 29, 2013.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)

7



# COURT OF APPEALS
# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS
# JUDGMENT

**AUGUST 29, 2013**

**NO. 12-12-00259-CV**

**JOHN REEVES, MELBA REEVES, AND NAN MILLER,**
Appellants
V.
**ROBERT HOOTON,**
Appellee

Appeal from the 3rd Judicial District Court
of Anderson County, Texas. (Tr.Ct.No. 3-41048)

THIS CAUSE came to be heard on the oral arguments, appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that all costs of this appeal are hereby adjudged against the appellants, **JOHN REEVES, MELBA REEVES, AND NAN MILLER**, for which execution may issue, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*