

# Fourth Court of Appeals
## San Antonio, Texas

### CONCURRING & DISSENTING OPINION

No. 04-14-00650-CV

Michael A. **CERNY** and Myra L. Cerny, Individually,
and as Next Friends of Cameron A. Cerny, a Child,
Appellants

v.

**MARATHON OIL CORPORATION**, Marathon Oil EF LLC,
and Plains Exploration & Producing Company,
Appellees

From the 218th Judicial District Court, Karnes County, Texas
Trial Court No. 13-05-00118-CVK
Honorable Stella Saxon, Judge Presiding

Opinion by:    Rebeca C. Martinez, Justice
Concurring & Dissenting Opinion by: Luz Elena D. Chapa, Justice

Sitting:       Sandee Bryan Marion, Chief Justice
               Rebeca C. Martinez, Justice
               Luz Elena D. Chapa, Justice

Delivered and Filed:  October 7, 2015

The Cernys' nuisance claims are not based solely upon the migration of hazardous chemicals and wastes onto their property causing medical "symptoms," but also upon excessive noise, foul odors, dust pollution, and abnormal traffic interfering with the use and enjoyment of their property. Because determining the source of the latter types of nuisance claims is within common knowledge and experience, and the record contains some admissible evidence connecting the alleged foul odors to Plains's conduct, I dissent in part to the majority's judgment.

The Cernys pled claims against appellees for three different categories of nuisance: (1) "Defendants caused releases, emissions, or discharges of hazardous gases, chemicals, and hazardous wastes through its operations, which migrated to the plaintiffs' property;" (2) "Defendants caused offensive odors, foul smells, and noises through its operations which were constantly assaulting the plaintiffs' senses, when on their property;" and (3) Defendants caused offensive dust pollution and abnormal traffic through its operations through and by the plaintiffs' property." They further alleged:

> The frequency, duration, degree and extent of defendants' conduct resulted in a condition that substantially interfered with the plaintiffs' private use and enjoyment of their property by, among other things, causing unreasonable fear, apprehension, offense, discomfort, annoyance, sickness, injury to physical health, impairment of physical health, exacerbation of physical health and/or preexisting health conditions, harm from assault on plaintiffs' senses, nausea, depression, loss of peace of mind, emotional harm/distress, inconvenience, deprivation of enjoyment of property, deprivation of use of property for plaintiffs' business, injury to plaintiffs' animals, damage to plaintiffs' home and land around the home, diminution of plaintiffs' property value, constructive eviction from the plaintiffs' property, and loss of plaintiffs' quality of life.

They sought damages for medical expenses and for the loss of use and enjoyment of their property.

"There is no question that foul odors, dust, noise, and bright lights—if sufficiently extreme—may constitute a nuisance." *Schneider Nat'l Carriers, Inc. v. Bates*, 147 S.W.3d 264, 269 (Tex. 2004). Such nuisance claims may support a damages award for loss of use and enjoyment of property, even in the absence of personal injury and property damage. *Burditt v. Swenson*, 17 Tex. 489, 502-03 (1856); *Rankin v. FPL Energy, LLC*, 266 S.W.3d 506, 512 n.9 (Tex. App.— Eastland 2008, pet. denied); *GTE Mobilnet of S. Texas Ltd. P'ship v. Pascouet*, 61 S.W.3d 599, 615 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). Furthermore, abnormal conduct giving rise to a nuisance claim can include "a more or less continuous interference with the use and enjoyment of property by causing or permitting the escape of deleterious substances or things,

such as smoke, odors, noises, etc." *Wales Trucking Co. v. Stallcup*, 474 S.W.2d 184, 187 (Tex. 1971).

Although the Cernys disclaim any damages that would implicate *Havner*'s strict standard, their other damage claims are not exempt from ordinary evidentiary requirements for proving causation. The Cernys sought damages for medical expenses and a variety of other damages relating to the loss of use and enjoyment of their property. When plaintiffs allege a defendant caused them to suffer a medical injury, lay testimony of causation will suffice only when "both the occurrence and conditions complained of are such that the general experience and common sense of laypersons are sufficient to evaluate the conditions and whether they were probably caused by the occurrence." *Jelinek v. Casas*, 328 S.W.3d 526, 534 (Tex. 2010) (quoting *Guevara v. Ferrer*, 247 S.W.3d 662, 668 (2007)). Expert testimony is necessary when there are multiple potential causes of the medical injury. *Id.* at 533-34. I agree with the majority the Cernys were required to present expert testimony that any of appellees, to the exclusion of other potential causes, caused their alleged medical injuries. *See id.* However, the Cernys claim other compensable, non-medical damages resulting from the second and third categories of nuisances: unreasonable fear, apprehension, offense, discomfort, annoyance, harm from assault on plaintiffs' senses, loss of peace of mind, emotional harm/distress, inconvenience, deprivation of enjoyment of property, deprivation of use of property for plaintiffs' business, constructive eviction from the plaintiffs' property, and loss of plaintiffs' quality of life. *See Burditt*, 17 Tex. at 502; *Rankin*, 266 S.W.3d at 512; *Pascouet*, 61 S.W.3d at 616.

A lay witness may testify to opinions that are rationally based on the perception of the witness and helpful to an understanding of his testimony or a determination of the fact at issue. *Havner v. E–Z Mart Stores, Inc.*, 825 S.W.2d 456, 464-65 (Tex. 1992); *see* TEX. R. EVID. 701. "Lay testimony is adequate to prove causation in those cases in which general experience and

common sense will enable a layman to determine, with reasonable probability, the causal relationship between the event and the condition." *Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 733 (Tex. 1984). In nuisance cases based on excessive noise and foul odors, landowners' testimony that a defendant caused the excessive noise or foul odors, if rationally based on the perception of the witness, can be some evidence of causation. *See, e.g.*, *Pool v. River Bend Ranch, LLC*, 346 S.W.3d 853, 859 (Tex. App.—Tyler 2011, pet. denied) (holding testimony of landowners and neighbors regarding noise and excessive traffic was legally sufficient to support trial court's finding that the noise levels constituted nuisance); *Pascouet*, 61 S.W.3d at 616 (holding landowners' testimony of substantial and continuous interference with the use and enjoyment of their property caused by bright lights and noise was legally sufficient to support jury's damages finding).

The Cernys submitted affidavits in support of the nuisance claims that Plains caused foul odors to permeate their property. After describing the extent of the foul odors and how they interfered with the use and enjoyment of their property, the Cernys' affidavits state that in the area where they live, the wind usually blows from the south and during the south winds, they would smell a strong odor. The Cernys stated they set out to detect where the smell was coming from and drove until they found Plains's drip station almost directly to the south of their property. Their affidavits confirmed they "regularly smell[ed] its odors during southerly winds." I would hold the trial court clearly abused its discretion by striking the affidavits on the ground that the Cernys were not qualified experts; lay witness testimony is sufficient for this type of nuisance claim and the Cernys' affidavits were clearly relevant to prove causation and other elements of their nuisance claims (e.g. interest in the property). *See Pool*, 346 S.W.3d at 859; *Pascouet*, 61 S.W.3d at 616.

The Cernys also submitted the affidavit of Sharon Wilson. Wilson's affidavit states she conducted air sampling and took video-recordings with a FLIR GasFindIR camera. Her affidavit explains:

> In March 2013, Mike and Myra took members of Earthworks and ShaleTest to several facilities where we recorded FLIR video. At a Plains Exploration & Producing Company ("PXP") facility named Kotara Ridley/Love Crews Drip Station we observed through the FLIR camera a huge release blowing across the road. There was an overpowering smell of hydrogen sulfide (rotten eggs). An air sample was collected from the plume in a Summa Canister. The results showed several hazardous substances, including benzene at a rate 20 times above the Texas Commission on Environmental Quality's (TCEQ) Long Term Health Effects Screenings Limit. Everyone in our group except one person who was wearing a respirator experienced health effects including headache, nausea, sore throat and burning eyes and nasal passages.
>
> In order to see if any of these hazardous substances were migrating onto the Cerny property, we placed a second, 12-hour canister at the Cerny property, outside of their house. The canister results at the Cerny property showed that 6 of the hazardous substances found at the PXP drip station were also found on the Cemy property, including the benzene. . . .

Appellees moved to strike Wilson's affidavit on the grounds that she was "not qualified to testify that emissions from oil and gas facilities *caused medical symptoms and such testimony is unfairly prejudicial*" (emphasis added). They also moved to strike the samples and the FLIR video she took on the grounds they would "not assist the trier of fact to understand the issue of whether emissions from [defendants'] facilities caused Plaintiffs' alleged injuries because there is no indication as to the level of emissions shown on the video, the content of the emissions, or how the emissions would affect Plaintiffs or Plaintiffs' property." Appellees did not object to Wilson's qualifications for collecting and analyzing air samples or for taking video-recordings with a FLIR camera. I would hold the trial court abused its discretion by striking Wilson's affidavit because, even if Wilson were not qualified to testify to the Cernys' medical conditions and the FLIR video did not connect the alleged toxins to the Cernys' medical conditions, Wilson's affidavit is some evidence that a Plains facility was responsible for the foul odors detected at the Cernys' home.

Appellees note that several other companies conducted operations near the Cernys' home. When plaintiffs claim a defendant caused them a medical injury, and there are multiple potential causes for the medical injury, then expert testimony is necessary to prove causation. *Jelinek*, 328 S.W.3d at 534. Appellees do not cite to any authority that the requirement for expert testimony extends to nuisance cases, such as this one, in which plaintiffs complain of foul odors. Furthermore, Wilson's and the Cernys' affidavits are not conclusory or speculative because they explain why, based on their observations, the foul odors were coming from a Plains facility, and appellees do not refer to any evidence that the foul odors were emitted by any of the other companies' operations. *See Meat Producers*, 476 S.W.2d at 410 (holding testimony from lay witnesses about the source and severity of foul odors, and that wind carried over the odors to plaintiff's land, sufficient to support jury's nuisance finding); *Bowie Sewerage Co. v. Chandler*, 138 S.W.2d 585, 589 (Tex. Civ. App.—Fort Worth 1940, writ dism'd) ("If offensive odors are emitted from Jones Creek and may be smelled by the persons who live on plaintiff's farm, this may be testified to by laymen, as a matter of course, . . . .").

When the evidence is viewed in a light most favorable to the Cernys and all reasonable inferences are drawn in their favor, there is more than a scintilla of evidence connecting Plains's operations to the foul odors interfering with the Cernys' use and enjoyment of their property. Although I agree with most of the majority's opinion, I would reverse and remand the Cernys' odor-based nuisance claim against Plains.

Luz Elena D. Chapa, Justice